**STATE**

v.

**Stephen M. DeANGELIS.**

No. 93–631–C.A.

Supreme Court of Rhode Island.

May 5, 1995.

Jeffrey Pine, Atty. Gen., Annie Goldberg, Sp. Asst. Atty. Gen., Aaron Weisman, Asst. Atty. Gen., for plaintiff.

Richard Gonnella, Providence, Karen Ellsworth, South Kingstown, for defendant.

## OPINION

LEDERBERG, Justice.

The State of Rhode Island (state) has appealed to the Supreme Court the dismissal of a criminal information lodged against Ste-

phen M. DeAngelis (defendant). The appeal was taken after the Superior Court granted the defendant's motion to dismiss for lack of a speedy trial. We deny the state's appeal and affirm the judgment. The facts insofar as pertinent to the appeal are as follows.

### Facts and Procedural History

On September 1, 1988, the Rhode Island State Police (police) were informed that defendant was wanted on narcotics charges and that defendant was expected to be at his dentist's office in Warwick, Rhode Island, the very next day. An inquiry by police to the National Crime Information Center revealed that defendant was indeed wanted by the Broward County Sheriff's office in Fort Lauderdale, Florida, for criminal solicitation for murder and for failure to appear on cocaine-trafficking charges. The next morning, September 2, 1988, the police entered the dentist's office and arrested defendant as he sat in a dental chair waiting to be examined. An inventory of defendant's car yielded, among other things, a loaded automatic pistol and a Rhode Island driver's license bearing the name Robert Knapik at a Newport, Rhode Island, address and the date of birth August 31, 1946. The defendant was subsequently arraigned on charges of being a fugitive from justice, possessing a pistol without a permit, and possessing a pistol while a fugitive.

During the arraignment in District Court, his attorney objected to defendant's extradition to Florida before the disposition of the Rhode Island charges and demanded a speedy trial. The objection was overruled.

After Florida officials were notified that defendant was in custody in Rhode Island, the Governor of Florida requested that Rhode Island extradite defendant to Florida. In response, on November 23, 1988, the Governor of Rhode Island issued a warrant for defendant. The defendant was arraigned in Rhode Island on the Governor's warrant on November 29, 1988, and the trial justice ordered defendant returned to Florida.

On December 2, 1988, criminal information No. K2/88-794A was filed in Rhode Island, charging defendant with carrying a pistol without a license in violation of G.L.1956 (1981 Reenactment) § 11-47-8, as amended by P.L.1988, ch. 389, § 1 (count 1), possessing a firearm while a fugitive from justice in violation of § 11-47-5 (count 2), and using a false name to obtain a driver's license in violation of G.L.1956 (1982 Reenactment) § 31-11-16(e) (count 3).

On December 5, 1988, defendant was returned to Florida. Two days later defendant's counsel appeared before the Superior Court of Rhode Island for defendant's arraignment and moved for a speedy trial. This motion was granted, and a warrant was issued for defendant but was never lodged against him in Florida. The court noted at the time that defendant was "serving in Miami Fla."

The defendant remained in Florida until he was released in December 1992. Upon release, defendant returned to New England and established a home in Massachusetts. When he became aware that a Rhode Island warrant for his arrest was outstanding, defendant voluntarily reported to the authorities. On June 24, 1993, defendant was arraigned in Superior Court on criminal information No. K2/88-794A. On July 26, 1993, prior to trial, defendant moved to dismiss this information on the grounds that his right to a speedy trial under the Sixth Amendment to the United States Constitution and art. 1, sec. 10, of the Rhode Island Constitution had been violated.

On November 5, 1993, defendant's motion to dismiss was granted by the Superior Court. In her decision, the trial justice, citing the four-pronged test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), found the following: that the five-year delay was sufficient to trigger an inquiry into whether defendant had been denied a speedy trial, that the reason for the delay was the negligence of the Attorney General's office in not lodging the December 7, 1988 warrant, that defendant asserted his right to a speedy trial on at least two occasions, and that the five-year delay was presumptively prejudicial. On November 10, 1993, the trial justice entered an order granting defendant's motion to dismiss the criminal information, and nine days later, the state filed a notice of appeal from the pretrial

order pursuant to G.L.1956 (1985 Reenactment) § 9–24–32.

## FOUR ISSUES ON APPEAL

On appeal, the state argued four points: first, that Rhode Island was without discretion to refuse to return defendant on the Florida warrant; second, that the trial justice erred in interpreting the Interstate Agreement on Detainers Act (IADA) to require Rhode Island to lodge a detainer; third, that the trial justice erred in ruling that the state's failure to lodge a detainer was negligence that required dismissal; and fourth, that the trial justice improperly decided that defendant's constitutional right to a speedy trial had been violated.

### Extradition to Florida

The state first argued that the extradition clause of the United States Constitution, Art. IV, sec. 2, cl. 2, mandated that the state surrender defendant to Florida authorities.

■ We find it unnecessary to determine at this point whether the extradition clause required the state to respond immediately to Florida's request because Rhode Island's Uniform Criminal Extradition Act is dispositive of the issue. In particular, G.L.1956 (1981 Reenactment) § 12–9–3 delineates the duty of the Governor of Rhode Island to deliver fugitives from justice and directs the Governor "to have arrested and delivered up to the executive authority of any other state * * * any person charged in that state with [a] crime, who has fled from justice and is found in this state." The Governor's authority is further defined by § 12–9–22 of the Uniform Criminal Extradition Act that provides,

"If a criminal prosecution has been instituted against such person under the laws of this state and is still pending, the governor, in his discretion, either may surrender him on demand of the executive authority of another state or hold him until he has been tried and discharged or convicted and punished in this state."

Read together, these statutes clearly grant to the Governor of Rhode Island discretion either to hold and to prosecute a person in this state while that person remains a fugitive from justice in another or to deliver the fugitive to the other state. Whereas the Uniform Criminal Extradition Act does make the Governor's duty to deliver a fugitive mandatory, it also grants the Governor discretion to hold and to try the fugitive in Rhode Island. Because these two alternatives are not mutually exclusive, the trial justice in the instant case did not err in finding that defendant need not have been immediately returned to Florida but could have first been tried on the charges lodged against him in Rhode Island.

### The Interstate Agreement on Detainers Act (IADA)

The state next raised two related arguments anent the proper interpretation of the IADA, codified at G.L.1956 (1981 Reenactment) chapter 13 of title 13. The state's first contention was that the trial justice erred in interpreting the IADA to require Rhode Island to lodge a detainer with Florida. Our review of the record, however, does not disclose such an interpretation by the trial justice. The state is correct, however, in pointing out that the IADA does not contain such a requirement.

### The State's Negligence

■ The state further argued that the trial justice erred in finding that the state was negligent in not filing this detainer. The trial justice stated:

"The Attorney General returned an information against the defendant, and on 12/7, [defendant's counsel] appeared at the arraignment, indicated that his client was serving a sentence in Miami, Florida, and moved for a speedy trial at that point. The Clerk's note reflects that the defendant's motion for speedy trial was granted. The Clerk's note also reflects that the defendant was serving a sentence in Miami, Florida, and the Superior Court issued a warrant for the arrest of the defendant. That warrant, however, was never lodged against the defendant in the state of Florida, and that fact has not been explained by the state of Rhode Island adequately to this court. The warrant never having been lodged against the defendant, the de-

fendant certainly could not exercise his rights under the Interstate Compact on detainer."

The trial justice also noted that defendant lost the opportunity to serve his Rhode Island and Florida sentences concurrently "because of the State's negligence in failing to lodge the warrant."

We are of the opinion that the trial justice did not err in finding negligence on the part of the state. Although the state was not required to file a detainer, it was permitted to do so, and its failure to do so denied defendant his right to a timely trial. The IADA serves "to assure incarcerated defendants of speedy trials and to protect them from delays in trial caused by prosecuting authorities." *State v. Moosey*, 504 A.2d 1001, 1003 (R.I.1986). The IADA itself states that the purpose of the agreement is to "encourage the expeditious and orderly disposition of * * * charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." Section 13–13–2, art. I. Thus, the state had a procedure, the IADA, designed to expedite a defendant's trial in its own jurisdiction while that defendant was incarcerated in another jurisdiction. The state's failure to lodge the detainer was therefore properly considered by the trial justice, who correctly determined that the state's inactivity was negligent.

### The Right to a Speedy Trial

■ The final argument the state raised was that the trial justice erred in her application of the four-pronged test announced by the United States Supreme Court in *Barker*. In that case, the Supreme Court identified four factors by which courts may assess whether a defendant has been deprived of the right to a speedy trial: The "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. The determination of whether the right to a speedy trial has been violated requires the weighing of each factor, with no single one being wholly dispositive. *State v. Powers*, 643 A.2d 827, 830–31 (R.I.1994).

■ The first factor, the length of the delay, has been described as "a triggering mechanism" to initiate a review of the remaining factors. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. This court has held that a delay of over twelve months is "'presumptively prejudicial.'" *Powers*, 643 A.2d at 831 (citing *State v. Tarvis*, 465 A.2d 164, 175 (R.I.1983)). In the instant case, the length of the delay was five years and was therefore presumptively prejudicial. Consequently, we hold that the trial justice did not err in finding that the delay was sufficient to trigger the full *Barker* analysis. *Id.* at 831.

■ The second *Barker* factor, the reason for the delay, centered on the state's failure to file a detainer with Florida authorities. The state argued that the reason for the delay was that on the day defendant was to be arraigned in Superior Court, he was incarcerated in Florida. The state itself correctly points out, however, that a prosecuting authority is not relieved of its obligation to provide a defendant a speedy trial because he is in custody elsewhere. *United States v. Mauro*, 436 U.S. 340, 358, 98 S.Ct. 1834, 1846, 56 L.Ed.2d 329, 346 (1978). The trial justice correctly pointed out the primary reason for the delay: "The Court finds that it was negligence on the part of the State for failure to lodge the warrant, the detainer against the defendant, and that has resulted in the delay in bringing the defendant to trial." Although defendant was not entirely without fault in the delay insofar as he failed to notify Rhode Island authorities when he was released from the Florida prison system in 1992, the state's role was more significant. As the United States Supreme Court has stated:

"A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. *A more neutral reason such as negligence * * * should be weighted less heavily* but nevertheless should be considered since *the ultimate responsibility for such circumstances must rest with the government* rather than with the defendant." (Emphases added.) *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

Thus, the trial justice accurately assessed this factor against the state.

■ The third factor in the *Barker* analysis addresses defendant's assertion of his right to a speedy trial. *Powers,* 643 A.2d at 832. In the instant case, defendant requested a speedy trial after his arrest in 1988, again, via counsel, in December 1988, and again in July 1993. Although defendant's assertions cannot be classified as an exhaustive "banging on the courthouse doors," *id.* at 833 (quoting *Tate v. Howard,* 110 R.I. 641, 656, 296 A.2d 19, 27 (1972)), his efforts were sufficient to qualify as an assertion of his right under the *Barker* test.

■ Fourth, we must consider the prejudice to defendant. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. The state contended that there was no evidence that defendant's defenses were impaired by the four-year delay before trial in that defendant produced no witnesses to alter the valuation of the physical evidence found on his person. Whether a defendant has been prejudiced should be assessed in accordance with three interests that the right to a speedy trial was designed to protect. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118. These interests serve to prevent oppressive pretrial incarceration, to minimize the anxiety and concern of the accused, and to limit the possibility that the defense will be impaired. *Id.* The most important of the factors is the last, "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Although defendant, already incarcerated in Florida, may not seem at first to need concern himself with "oppressive incarceration prior to trial," the lack of a speedy trial has been deemed to result in "as much oppression as is suffered by one who is jailed without bail upon an untried charge." *Smith v. Hooey,* 393 U.S. 374, 378, 89 S.Ct. 575, 577, 21 L.Ed.2d 607, 611 (1969). Such was the situation in the instant case in which defendant, as the trial justice noted, forever lost the opportunity to serve the Florida and the Rhode Island charges concurrently.

In respect to the anxiety and concern accompanying public accusation, the United States Supreme Court has previously noted that "an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large." *Id.* at 379, 89 S.Ct. at 577, 21 L.Ed.2d at 612.

Last, we address the issue of whether the delay impaired the ability of defendant to defend himself. In analyzing this issue, we turn to *Doggett v. United States,* —— U.S. ——, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), in which the prosecution, as in the instant case, claimed that the defendant had failed to make any affirmative showing that the delay had prejudiced his defense, particularly his ability to raise specific defenses, to direct specific testimony, or to produce specific items of evidence. *Id.* at ——, 112 S.Ct. at 2692, 120 L.Ed.2d at 530. The Supreme Court concluded, however, that consideration of prejudice is not limited to that which is specifically demonstrable and that affirmative proof of particularized prejudice is not essential to every speedy-trial claim. *Id.* The Court noted:

> "[W]e generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria * * * it is part of the mix of relevant facts, and its importance increases with the length of delay." *Id.* at ——, 112 S.Ct. at 2693, 120 L.Ed.2d at 531.

■ In the instant claim, the delay lasted five years and was primarily attributable to the negligence of the state. Even though negligence on the part of the state is not as blameworthy as a purposeful, bad-faith effort to delay, negligence is not "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Id.* The burden of the state's negligence should not fall on the accused simply because he or she is unable to concretely demonstrate actual prejudice. Furthermore, the longer the delay, the greater the presumptive prejudice to a defendant's case. The Supreme Court stated further in *Doggett:*

"[S]uch is the nature of the prejudice presumed that the weight [assigned] to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness * * * and its consequent threat to the fairness of the accused's trial." *Id.* at ——, 112 S.Ct. at 2693, 120 L.Ed.2d at 532.

Thus, the state's negligence in failing to file the detainer compounded every day that the defendant was not tried after his arraignment, and after five years, the accumulation of presumed prejudice became significant. We conclude, therefore, that the trial justice correctly found that the defendant had satisfied the fourth element of the *Barker* analysis.[1]

In summary, we conclude that the arguments set forth by the state are insufficient to withstand analysis. We therefore deny and dismiss the state's appeal and affirm the judgment of the Superior Court. The papers in the case may be returned to the Superior Court.

---

1. The state also discussed the Due–Process Clause, unaddressed by defendant, and then conceded that the appropriate analysis in this case is the four-part *Barker* test. Because there is no evidence that this issue ever came before the trial justice, and the state concedes that Due Process was not the proper inquiry for this issue, we refrain from addressing it.