STATE

v.

Carlton J. BLEAU.

No. 94–395–C.A.

Supreme Court of Rhode Island.

Dec. 22, 1995.

Annie Goldberg, Aaron Weisman, Asst. Attys. General, for Plaintiff.

Albert B. West, Providence, for Defendant.

**OPINION**

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of Carlton J. Bleau (defendant) from a judgment of conviction of two counts of first-degree sexual assault, one reduced charge of second-degree sexual assault, and one charge of malicious destruction of property. The defendant was sentenced to concurrent terms of forty-five years on each count of first-degree sexual assault, to a consecutive term of ten years on the second-degree sexual assault charge, and to one year—concurrent with the two forty-five-year sentences—on the charge of malicious destruction of property. On appeal, the defendant argued that he was denied his right to a speedy trial; he also claimed prejudice in the rejection of his demand for new counsel and challenged the denial of his motion for a new trial. For the reasons stated below, we deny the defendant's appeal and affirm the judgment of the Superior Court. The facts insofar as pertinent to the issues raised on appeal are briefly summarized.

**Facts and Procedural History**

On January 13, 1988, at approximately 11:30 p.m., Barbara Lindquist (Lindquist) went to a neighborhood bar in Central Falls, Rhode Island, hoping to find her sister. After discovering that her sister was not there, Lindquist ordered a drink and sat and talked with the bartender, Elaine Beaudette, an acquaintance of her sister's. Over the next

couple of hours, Lindquist had two or three more drinks and played pool with a group of people that included defendant and friends of Lindquist's sister. At approximately 1:45 a.m., the entire group departed and, after talking in the parking lot, went their separate ways.

At trial, Lindquist testified that, at some point in the evening, defendant had persuaded her to give him a ride to his home. Thus, when the group dispersed, she and defendant drove off together in her car. She further testified that she had driven, at defendant's direction, up and down a series of side streets for approximately twenty minutes when he instructed her to pull into the parking lot of an industrial park. Lindquist testified that once in the parking lot, defendant struck her, sexually assaulted her, took her purse, and after ordering her to remain in the car, punctured all four tires on the automobile and then fled.

At approximately 3:45 a.m., the police discovered Lindquist wandering down the street, screaming and crying, her face swollen, her lip cut, her jeans and underwear torn and hanging from her body. She said she had just been raped. The police found Lindquist's car almost a block away with four flat tires, all with punctures.

On January 18, 1988, the police showed Lindquist an array of five photographs of middle-aged white men wearing glasses, from which array she identified defendant. The defendant was arrested the following day and was later released on bail. An indictment was filed on May 24, 1988, charging defendant with three counts of first-degree sexual assault, one count of robbery, and one count of malicious destruction of property. The defendant failed to appear at his scheduled arraignment on June 15, 1988, and a warrant for his arrest was issued. On July 28, 1988, defendant was arrested in Bangor, Maine, and was returned to Rhode Island, where he was arraigned on August 11, 1988, and again released on bail on August 22, 1988.

Meanwhile, defendant had also been charged with assault with a dangerous weapon and leaving the scene of an accident resulting in a personal injury in a separate incident on January 11, 1988. On October 31, 1989, defendant not only failed to appear for a status conference on the charges in the instant case but also failed to appear for trial on the assault-with-a-dangerous-weapon and leaving-the-scene charges, resulting once again in the issuance of a warrant for his arrest. The defendant, who had again left the state, was arrested and returned to Rhode Island in July 1992. On July 15, 1992, defendant admitted to and was declared to be a violator of the conditions of his release and was remanded to the Adult Correctional Institutions.

The trial on the assault-with-a-dangerous-weapon and leaving-the-scene charges began on January 6, 1993, and ended two days later with acquittal of the assault and conviction of leaving the scene. On February 3, 1993, a motion for a new trial was denied, and on March 17, 1993, defendant was sentenced to serve seven months of a two-year sentence, with seventeen months suspended.

A jury trial in the instant case was held during seven days in July 1993. The defendant was found guilty of two charges of first-degree sexual assault, guilty of a reduced charge of second-degree sexual assault, and guilty of malicious destruction of property. On September 10, 1993, defendant's motion for a new trial was denied, and following his sentencing on November 26, 1993, defendant filed this appeal, pursuant to G.L.1956 (1985 Reenactment) § 9–24–32.

## Right to a Speedy Trial

▬ On appeal defendant contended that he had been denied his right to a speedy trial, as guaranteed by both the United States and the Rhode Island Constitutions. U.S. Const. Amend. VI; R.I. Const. art. 1, sec. 10. In *Tate v. Howard*, 110 R.I. 641, 647–48, 296 A.2d 19, 23–24 (1972), this Court adopted the test set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), in assessing whether a criminal defendant's right to a speedy trial has been violated. The *Barker* analysis entails the consideration of four factors: (1) the length of time before trial, (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4)

the prejudice to the defendant. 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. This Court has stated that the determination of whether a constitutional violation has occurred "requires the weighing of each factor, with no single one being wholly dispositive." *State v. DeAngelis,* 658 A.2d 7, 11 (R.I.1995) (citing *State v. Powers,* 643 A.2d 827, 830–31 (R.I.1994)).

■■■ The first *Barker* factor, length of delay, triggers the process for determining whether a defendant's right to a speedy trial has been violated. If the delay is long enough to be considered "presumptively prejudicial," a review of the remaining three factors is required. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. This Court has held that a delay of over twelve months is "presumptively prejudicial." *DeAngelis,* 658 A.2d at 11 (quoting *Powers,* 643 A.2d at 831). Although more than five years passed between defendant's indictment in May 1988 and his trial on the instant charges in July 1993, most of that delay was attributable to defendant's voluntary and unlawful absence from this state. Accordingly, the trial justice found, with no objection from defendant, that "the new speedy trial clock began to run" in July 1992 when defendant was returned to Rhode Island. The trial on the assault-with-a-dangerous-weapon and leaving-the-scene-of-the-crime charges began on January 6, 1993, less than six months after defendant's return to the jurisdiction, and the instant trial commenced six months after that on July 6, 1993. Because the length of delay was less than twelve months and, therefore, not presumptively prejudicial, the trial justice was not required to consider the remaining three *Barker* factors before determining that defendant had not been denied his right to a speedy trial.

■■■ This Court notes that even if it were necessary to review the remaining *Barker* factors, we would nevertheless conclude that defendant's right to a speedy trial had not been violated. First, to the extent that there was any delay in defendant's reaching trial on the instant charges, the primary reason for the delay was defendant's trial on other charges, time this Court has held "should not be weighed against the state when assessing the reasons for the delay." *State v. Austin,* 643 A.2d 798, 801 (R.I.1994). Next, when assessing a defendant's assertion of his right to a speedy trial, this Court looks for actions sufficiently aggressive to constitute the equivalent of a "banging on the courthouse doors." *Powers,* 643 A.2d at 833 (quoting *Tate,* 110 R.I. at 656, 296 A.2d at 27). Using this standard, defendant's single request to counsel, in August 1992, for a speedy trial, following his extended unlawful absence from the state, is clearly insufficient to qualify as an assertion of his right. Finally, we are satisfied that a review of the record demonstrates the lack of any prejudice to defendant as a result of the delay between his return to Rhode Island and the commencement of trial. It reasonably follows, therefore, that because all the *Barker* factors weigh considerably against defendant, the trial justice did not err in finding defendant had not been deprived of his right to a speedy trial.

## Appointment of New Counsel

■■■ On appeal defendant contended that the trial justice's denial of his request for the appointment of new counsel undermined his right to a fair trial by compelling him to proceed to trial with an attorney in whom he had no confidence. It is well settled that the decision whether to grant a defendant's request for a continuance to secure alternative counsel lies within the sound discretion of the trial justice. *State v. Ashness,* 461 A.2d 659, 663 (R.I.1983). In exercising that discretion, the trial justice must weigh the interest of a criminal defendant in having counsel of his or her choice against the interest of the public in an efficient and effective criminal justice system. *Id.* at 664. In addition, the determination of "[w]hether the denial of a continuance is so arbitrary as to constitute a violation of due process depends upon the particular circumstances of each case and the reason asserted for the request." *Id.*

In *Ashness* the defendant was appointed private counsel six weeks prior to trial but waited until the day of trial to request a continuance to obtain alternative counsel. This Court affirmed the trial justice's denial

of the request, reasoning that the defendant had had ample time to secure other counsel or to inform the court of his dissatisfaction with his present counsel. We concluded that by the time defendant finally made his request, his right to secure counsel of his own choice was outweighed by the necessity of the "efficient and effective administration of criminal justice." *Ashness,* 461 A.2d at 664.

■ In the instant case, defendant appeared in court on the first day of trial, represented by the same attorney who had represented him at trial six months earlier. Clearly, he had had ample opportunity in the period between his first and his second trial to seek new counsel and/or to express dissatisfaction with his present counsel. Nevertheless, defendant chose to wait until the second day of trial to inform the trial justice that he was dissatisfied with his representation. The trial justice, in denying defendant's request for new counsel, noted that the jury had already been impaneled, the complaining witness was waiting to testify, other witnesses were being brought in from the FBI laboratory, and defendant had already raised the speedy-trial issue. It is our opinion that at that point, defendant's interest in obtaining counsel more to his liking was clearly outweighed by the public's interest in the efficient administration of the criminal justice system.

Moreover, the trial justice found that defendant had failed to present adequate grounds for the removal of counsel. Our careful review of the record has revealed that, although defendant contended that his ability to secure a fair trial was undermined because of his lack of confidence in his attorney, defendant made no explicit claim of ineffective assistance of counsel and, on appeal, actually conceded that trial counsel had not improperly represented him. On the basis of these facts, we conclude that the trial justice did not abuse his discretion in denying the request for a continuance to secure new counsel.

### Motion for a New Trial

■ The defendant also appealed the trial court's denial of his motion for a new trial on the three counts of sexual assault.

The standard for this Court's review of a trial justice's ruling on a motion for a new trial is well settled. "In deciding a motion for a new trial, the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Banach,* 648 A.2d 1363, 1367 (R.I.1994) (citing *State v. Marini,* 638 A.2d 507, 515 (R.I. 1994)). If, after an independent review of the evidence, the trial justice reaches the same conclusion as the jury, his or her task is complete and the verdict should be affirmed. *Id.* (citing *Marini,* 638 A.2d at 515–16). In cases in which the trial justice has complied with the requisite procedure and articulated an adequate rationale for denying a motion for a new trial, that decision will be given great weight and will not be disturbed unless the trial justice "overlooked or misconceived material evidence relating to a critical issue or if the justice was otherwise clearly wrong." *Id.* (citing *State v. Robbio,* 526 A.2d 509, 513 (R.I.1987)).

■ A review of the record before us indicated that the trial justice independently assessed the credibility of the witnesses, weighed the evidence, and in light of the charge to the jury, reached the same result as the jury reached. Thus, we are satisfied that the trial justice engaged in the requisite analysis and properly fulfilled his role as the thirteenth juror. We further conclude that the trial justice, in making his determination, considered and understood all material evidence and properly denied the defendant's motion for a new trial.

In conclusion, therefore, we deny and dismiss the defendant's appeal and affirm the judgment of conviction of the Superior Court, to which we return the papers of this case.