STATE

v.

Franklin D. BECOTE.

No. 2003–637–C.A.

Supreme Court of Rhode Island.

Jan. 18, 2005.

Christopher B. Bush, Providence, for Plaintiff.

Catherine A. Gibran, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

This case came before the Supreme Court on December 9, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

The defendant, Franklin D. Becote (Franklin or defendant),[1] appeals from a Superior Court judgment of conviction for one count of breaking and entering a dwelling in violation of G.L. 1956 § 11–8–2 and one count of conspiracy in violation of G.L. 1956 § 11–1–6. For the reasons set forth herein, we affirm the judgment of the trial court.

On a snowy afternoon in December 2002, Arthur Gonya (Gonya) stood in the second-floor bathroom of his Cranston

---

1. In the interest of avoiding confusion between defendant and his brother, we will re-fer to them by their first names.

home, preparing to take a shower, when he heard a crash, as if ice from the previous days' ice storms had fallen from the roof onto the deck below. When Gonya peered out of his bathroom window, he saw a green car parked in his backyard with its front doors open. He picked up his cell phone and called 911.

Three officers from the Cranston Police Department responded, finding two black males in the car in Gonya's backyard and one white male inside the house. They arrested the suspects, who later were identified as Franklin, Olaes Becote (Olaes), defendant's brother, and Joseph Vandale (Vandale). After the three men were taken into custody, Gonya identified as his, computer equipment found in the back seat of the green car.

On December 30, 2002, by criminal information, the state charged Franklin, Olaes, and Vandale with breaking and entering a dwelling without the consent of the owner and conspiracy to commit breaking and entering. An attorney from the Office of the Public Defender represented defendant, who was indigent. On the eve of trial, defendant informed the trial justice that he wished to discharge his attorney because he felt the attorney was not providing "enough support." When asked how the attorney's representation was deficient, defendant expressed his dissatisfaction with ongoing plea negotiations and declared: "I don't know the judicial system, sir, but I know an innocent man shouldn't be going to jail."

The trial justice informed defendant that he did not have to accept the plea bargain the state had offered him and that he was free to discharge his attorney, but the court would not appoint another attorney to represent him. The trial justice explained that "[t]he State of Rhode Island is required to appoint an attorney to represent you at no cost to you [who] is compe-

tent and is experienced and [who's] acting in your best interest. That description certainly fits [your attorney]." He went on to say that defendant could discharge his attorney if he wished and had the right to represent himself, but that the case was ready for trial. The defendant decided to retain the court-appointed attorney and agreed to proceed to trial with his appointed counsel.

At trial, Gonya testified about what occurred, explaining that while he was talking to the 911 operator, he observed one white male and two black males exiting his home carrying his computer equipment. Although he was unable to see their faces, he indicated that he was able to determine their skin color by looking at their hands. Gonya testified that none of the three suspects had permission to enter his house.

Officers Antonio Leite (Leite) and Robert A. Lindsay (Lindsay) relayed their accounts of what occurred, explaining that they approached the house from the west, while Officer Podedworny (Podedworny) had approached from the east. In an attempt to cover all four corners of the backyard, Podedworny moved toward the southeast corner, while Leite and Lindsay made their way along the edge of Gonya's property toward the northwest corner. From their position, Leite and Lindsay testified, they saw a black male enter the house through the back door. Unable to enter the backyard because of a six-foot stockade fence, Leite and Lindsay went around the house to join Podedworny.

In the backyard, the officers observed the green car with two men inside it. Podedworny and Lindsay approached the driver's and passenger's sides of the vehicle, respectively, and instructed the suspects to put their hands up. The officers removed the men from the car, and placed them in handcuffs. Leite and Lindsay identified the suspect removed from the

driver's seat as the same black man they had seen entering Gonya's house through the back door; they later learned that suspect was defendant's brother, Olaes.[2] Franklin later was identified as the suspect who sat in the passenger's seat.

Meanwhile, Leite circled back around to the front of the house and encountered a white male coming out of the front door of Gonya's house; he and Podedworny took the suspect into custody. He later was identified as Vandale.

The defendant took the stand on his own behalf, claiming that he was not involved in the breaking and entering of Gonya's house and was asleep in the car while Olaes and Vandale were removing the items from the home. He testified that, on the morning of December 5, 2002, Olaes and Vandale picked him up at his home in Providence. They drove around and drank beer, ending up in West Warwick to play cards and drink more beer, until defendant told Olaes that he was tired and wanted to go home. The defendant testified that he fell asleep in the front passenger's seat of Olaes's car and the next thing he remembered was being forcibly removed from the vehicle and placed in handcuffs.

■ The jury rejected defendant's testimony and returned a guilty verdict on both counts. The defendant moved for a new trial, asserting that the verdict was against the weight of the evidence. The trial justice commented on the sufficiency of the evidence and denied the motion, finding the state's account "highly more probable" than defendant's. On appeal, defendant argues that the trial justice abused his discretion by failing to grant a continuance when Franklin asked to dismiss his appointed counsel and that he also erred in denying the motion for a new trial.

The defendant argues that, although he failed to request a continuance, given his professed lack of knowledge of court procedure, his attempt to discharge his attorney should have been perceived by the trial justice as a motion for a continuance. The trial justice's lack of clairvoyance is understandable in light of the colloquy between defendant and the trial justice. The record discloses that Franklin waived any request for a continuance, implicit or otherwise. After informing defendant that another public defender would not be assigned to him and explaining that plea discussions are commonplace, the trial justice confirmed defendant's desire to proceed without discharging counsel.

> "THE COURT: Would you like to have [the court-appointed attorney] represent you at trial?
>
> "THE DEFENDANT: Yes, sir.
>
> "THE COURT: And are you asking me to bring up a jury so we can try this case?
>
> "THE DEFENDANT: Yes, sir."

Accordingly, we need not pass upon the propriety of the trial justice's failure to grant a continuance.

■ The defendant next contends that the trial justice clearly was wrong when he denied the motion for a new trial, suggesting that Franklin's testimony was overwhelmingly more credible than that of the state's three witnesses. Our review of the record reveals that the trial justice appropriately carried out his function as a "thirteenth juror." *See State v. Sosa*, 839 A.2d 519, 529 (R.I.2003) ("When ruling on a motion for a new trial, the trial justice acts

---

2. At trial, Leite misidentified defendant as his brother, Olaes. Thinking that Franklin was Olaes, Leite testified that defendant was the man he and Lindsay saw enter Gonya's house from the back porch and the man Podedworny removed from the driver's seat of the green car. The officer was cross-examined extensively on the misidentification.

as a thirteenth juror and independently evaluates the credibility of the witnesses and the weight of the evidence."). We are not persuaded that the trial justice "overlooked or misconceived material evidence relating to a critical issue or * * * was otherwise clearly wrong." *Id.* (quoting *State v. Bleau,* 668 A.2d 642, 646 (R.I. 1995)).

We note that Gonya testified that he saw three males leaving his home while stealing his property. Two males were observed inside the green vehicle with the stolen computer equipment and one man was apprehended exiting Gonya's house. In the face of this compelling eyewitness testimony, the trial justice clearly was justified in finding the state's witnesses to be credible and concluding that he agreed with the verdict. Accordingly, the trial justice appropriately denied the motion for a new trial.

For the reasons set forth herein, the judgment is affirmed and the papers in the case are remanded to the Superior Court.