DECISION
This case focuses on the issue of whether a defendant's right to a speedy trial has been violated when a warrant has been issued for his arrest, though he was later discovered to be in the state prison for the two year delay.
I. Facts and Travel.
On September 11, 2003, Clifton Prudence was arrested and detained at the Adult Correctional Institution ("ACI"). On December 11, 2003, Mr. Prudence pled nolo contendere[1] to the charges of felony assault by the use of devices similar in appearance to a firearm, and possession of a controlled substance. He was sentenced to serve three years, running from September 11, 2003.
During his imprisonment, the Providence Police Department continued to investigate several violent sexual assaults that had occurred in the summer of 2003. Mr. Prudence became a suspect and, in November or December of 2003, was questioned by Detective Green at the ACI. Soon thereafter, Detective Green delivered the charging package to the Office of the Attorney General which indicated that Mr. Prudence remained incarcerated at the ACI.
On April 1, 2004 (while Mr. Prudence was still serving his three year sentence) a grand jury indictment issued in the instant action. The indictment alleged that Mr. Prudence committed the sexual assaults in July of 2003.
At the report of the grand jury, the State requested that the indictment be sealed and a warrant issued for Mr. Prudence. When Mr. Prudence failed to appear at his arraignment on April 1, 2004, a warrant issued for his arrest. Mr. Prudence was still at the A.C.I.
Mr. Prudence claims he never knew about the indictment until May, 2006, days before his release date for the felony assault conviction. On May 15, 2006, Mr. Prudence was finally brought to the court, the warrant was cancelled and Mr. Prudence entered a not guilty plea to First Degree Sexual Assault. Bail was set at $100,000 with surety. The case was reassigned for bail review on June 2, 2006, and a pretrial conference was set for July 5, 2006. Mr. Prudence unsuccessfully argued a motion to reduce bail, and remains at the ACI for lack of bail to this day.
On June 5, 2006, Mr. Prudence, through his attorney, filed a Motion for a Speedy Trial and in the alternative, a Motion to Dismiss the Indictment for Lack of Speedy Trial. As various facts had been alleged, the Court scheduled the motion for an evidentiary hearing, allowing the State to show reasons for delay, Mr. Prudence to show any prejudice, and the parties to offer any other relevant evidence. Order, July 17, 2006. Detective Green was the only witness to testify.
The record here is silent as to what, if anything, was done with the warrant. Though the warrant is "paperless," the State was authorized to arrest Mr. Prudence and bring him to the Court. There is no evidence that the State conducted any search, or any indication of how Mr. Prudence was discovered at the prison.
II. Analysis.
The alleged crimes, as described by the State, are shocking and deplorable. The seemingly random sexual assaults were brutal. An intelligent and dedicated police detective pieced together the scant evidence to obtain positive identifications from the victims, enabling the State to secure an indictment from the grand jury. The State, not aware that Mr. Prudence was incarcerated at the ACI, requested that the indictment remain secret, so the defendant would not flee.
What happened thereafter is unclear and unproven.[2]
While Mr. Prudence remained at the ACI on another charge, the State apparently did nothing. The State entered a warrant into its computer where it laid fallow for over two years.
A. Mr. Prudence's Motion to Dismiss for Lack of SpeedyTrial
The United States Supreme Court in Barker v. Wingo,407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972) established a four-prong test to address a lack-of-speedy-trial claim. The four factors to consider are: (1) the length of the delay, (2) the reason for the delay, (3) Mr. Prudence's assertion of his right to a speedy trial, and (4) the prejudice to Mr. Prudence.Barker, 407 U.S. at 530. No single factor is wholly dispositive of a speedy trial claim, nor is the insufficiency of any one factor fatal to the claim. State v. Wheaton, 528 A.2d 1109,1112 (R.I. 1987).
1. The Length of the Delay
The first prong in the Barker analysis asks the court to measure the length of the pretrial delay. This prong is a "threshold consideration that triggers review of the remaining factors — but only if the delay is long enough to be considered `presumptively prejudicial.'" State v. Wheaton, 528 A.2d 1109,1112 (R.I. 1987). The Rhode Island Supreme Court has held that "a delay of more than twelve months is `presumptively prejudicial.'" Id. (quoting State v. Crocker, 767 A.2d 88, 92 (R.I. 2001)). Two Rhode Island cases have measured the length of delay from the time of the indictment. State v. Palmigiano, 306 A.2d 830, 832
(R.I. 1973); State v. Howard, 296 A.2d 19, 23-24 (R.I. 1972).[3] This presumptive prejudice does not obviate the need for other proof from defendant. As the United States Supreme Court stated:
 We note that, as the term is used in this threshold context, "presumptive prejudice" does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry. Doggett v. United States, 505 U.S. 647, 652, 112 S.Ct. 2686, 2691, 120 L.Ed. 2d 520, 528 (1992), footnote 1.
Here, the indictment was filed against Mr. Prudence on April 1, 2004. To this day, Mr. Prudence has not had his trial. Thus, the length of the delay is about 27 months. Because the length of the delay is greater than twelve months, the delay is presumptively prejudicial. As the delay was well over one year, the length of delay justifies an inquiry into the other Barker
factors.[4]
 2. The Reason for the Delay
Next, the analysis requires an inquiry into the reason for the delay. This second factor is a two-step analysis: (1) the court must determine the cause or causes of the delay and then (2) the court must balance the culpability of the parties in causing the delay. State v. Powers, 643 A.2d 827, 831 (R.I. 1994). Deliberate attempts by the State to delay the trial in order to hamper the defense should be weighed heavily against the State.Id. Other reasons, such as negligence or overcrowded courts should not be weighed as heavily against the State. Id. A valid reason for the State to delay trial would be if there was a witness missing. Id.
Here, Mr. Prudence argues that the State was grossly negligent because it failed to locate Mr. Prudence at the ACI and have him arraigned. (Clifton Prudence's Mem. in Supp. of his Mot. to Dismiss Indictment for Violation of his Right to a Speedy Trial, p. 5). The State stresses that the delay was not intentional, tactical, or vindictive, but the result of an oversight. (State's Mem. in. Supp. of its Obj. to the Def. Mot. to Dismiss the Indictment, p. 7). Mr. Prudence does not allege, nor does it appear, that the State deliberately delayed bringing this case to trial. When the State was asked at hearing why Mr. Prudence was never made aware of the indictment, the State responded that a "bench warrant" was issued, and claimed it didn't think anyone was actually looking for him; the warrant merely entered into a computer.
Similarly, the State failed to offer a logical explanation for a five year delay in DeAngelis, though Mr. DeAngelis was imprisoned in another state. "[T]he delay lasted five years and was primarily attributable to the negligence of the state. Even though negligence on the part of the State is not as blameworthy as a purposeful, bad-faith effort to delay, negligence is not `automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.' Id. The burden of the State's negligence should not fall on the accused simply because he or she is unable to concretely demonstrate actual prejudice. Furthermore, the longer the delay, the greater the presumptive prejudice to a defendant's case." State v.DeAngelis, 658 A.2d 11, 12 (R.I. 1995)
Because the State has not offered any valid reason, (such as a missing witness or defendant absenting himself from the jurisdiction) for delaying this case for over two years, this Court weighs the reason for the delay against the State. That said, neither party asserted that the State acted intentionally or in bad faith. While the State's negligence is evident, there was no assertion or evidence of a purposeful delay. The United States Supreme Court classified official negligence in bringing an accused to trial as the middle ground between bad-faith delay and diligent prosecution. Doggett, 505 U.S. at 657.[5]
3. Mr. Prudence's Assertion of the Right to a Speedy Trial
This Court next considers whether Mr. Prudence asserted his right to a speedy trial. In assessing this factor, the Rhode Island Supreme Court looks to actions sufficiently aggressive to constitute the equivalent of "banging on the courthouse doors."State v. Howard, 296 A.2d 19, 27 (R.I. 1972). There is no evidence that Mr. Prudence asserted his right to a prompt trial before the warrant was cancelled. However, there is no indication that Mr. Prudence knew he had been secretly indicted. Not knowing of the pending case obviously precluded his opportunity to request a speedy trial. Nevertheless, the defense concedes that Mr. Prudence's actions were not aggressive enough to be considered as banging on the doors.
Mr. Prudence claims that he did not have a duty to bring himself into court, but that the State had the duty to bring him to court. The State counters that Mr. Prudence should have known of the indictment because he knew he was a suspect when he was questioned at the ACI by Detective Green. Of course, not everyone questioned by the police is later indicted.[6] Although Mr. Prudence was not yet arraigned, he could have requested a speedy trial earlier. Mr. DeAngelis requested a speedy trial at his arrest before the five years passed until trial. DeAngelis,658 A.2d at 12. It simply should not have taken the State over two years to arraign Mr. Prudence for the charges pending against him
4. The Prejudice to Mr. Prudence
The last and most challenging Barker factor to analyze is the prejudice which the pretrial delay caused to Mr. Prudence. While a delay of over one year presumes prejudice justifying a consideration of the other factors, actual prejudice is an important factor to be considered. State v. Perez, 882 A.2d 574
(R.I. 2005).
This factor must be assessed in light of the interests of Mr. Prudence which the speedy trial right was designed to protect.Barker, 407 U.S. at 532. The United States Supreme Court has identified three such interests: (i) to prevent oppressive pretrial incarceration, (ii) to minimize anxiety and concern of the accused, and (iii) to limit the possibility that the defense will be impaired. Id.
Here, with respect to the first interest, Mr. Prudence argues that his pretrial incarceration was oppressive because he was not given the opportunity to serve his pretrial detention concurrently with his prison term. The State counters that there was no oppressive pretrial incarceration because Mr. Prudence was already incarcerated on another charge. Our high court's statement is persuasive: "although a defendant who is already incarcerated may not seem at first to need concern himself with `oppressive incarceration prior to trial,' the lack of a speedy trial has been deemed to result in as much oppression as is suffered by one who is jailed without bail on an untried charge."DeAngelis, 658 A.2d at 12. Therefore, though Mr. Prudence was already serving a three year sentence, serving beyond his release date, without bail, could be oppressive. Unlike Mr. DeAngelis who requested a speedy trial immediately after his arrest and again at his arraignment, Mr. Prudence never requested a speedy trial until he filed the immediate motion to dismiss. Mr. DeAngelis served five years in prison, each day knowing that there were charges pending against him in another state. Unlike Mr. DeAngelis, Mr. Prudence was not aware of the charges pending against him and therefore could not have suffered pretrial oppression while serving his original sentence.[7]
The second interest deals with the anxiety and concern of the accused. The defense alleges that Mr. Prudence was looking forward to his release date because he would be able to see his son for the first time. At hearing, Mr. Prudence tendered no proof. Mr. Prudence claims he did not request a speedy trial as he did not know of the indictment, and if did not know of the charges he cannot claim anxiety or concern during the delay.[8]
The third interest is the most important "because the inability of [Mr. Prudence] to properly prepare his case skews the fairness of the entire system." Barker, 407 U.S. at 532. The defense speculates that because the two years elapsed since the alleged sexual assault, Mr. Prudence, along with witnesses, will have difficulty remembering what happened that day. Memories fade over time. Again, Mr. Prudence references no witness nor does he allege any alibi in jeopardy.
In addressing his prejudice, Mr. Prudence is faced with a dilemma. Anxious to exercise his right against self-incrimination, he is reluctant to testify (or perhaps put forth any defense) at this precarious, pretrial stage. What defense he may put forth may not be clear until trial, and the prejudice may not evidence until then (e.g. when a witness cannot be located). In the same, his reluctance to testify likely impedes his ability to demonstrate oppression or anxiety. Still, Mr. Prudence could have called other witnesses or presented other proof to demonstrate this harm.
Given the opportunity to tender proof, Mr. Prudence has presented no actual prejudice and this prong is weighed in favor of the State.
5. A Historical Perspective.
As often occurs with such speedy trial motions, the application of the Barker v. Wingo four-prong test results in a close call. The State has left an identified prisoner unarraigned for a new indictment for 23 months without explanation. The defendant adds little to the mix, failing to demonstrate actual harm or prejudice. As perplexing and distasteful as the State's delay may be, a historical review of the speedy trial right provides comfort.
First and foremost, the actual language of the Sixth Amendment is fundamental and vital in any analysis. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . ." United States Constitution, Amendment 6.
In United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455,30 L.Ed.2d 468 (1971) the court focused on when the right to a speedy trial first attaches.
 On its face, the protection of the Amendment activated only when a criminal prosecution has begun and extends to those persons who have been accused in the course of that prosecution. These provisions would seem to afford no protection to those not yet accused . . .
In determining whether a three month delay between the end of the criminal scheme charged and the indictment violated the right to speedy trial, the court held
 Invocation of the speedy trial provision thus need not await indictment, information, or other formal charge. But we decline to extend that reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: . . . Marion, 404 U.S. at 321.
Thus, the Marion court was reluctant to afford speedy trial protection to a person who had not been arraigned, or arrested. Similar to the situation Mr. Prudence was in, no public ridicule was suffered by a charge not made public, nor was the defendant in prison for the charged crime.
Finding the need for actual prejudice, the Marion court also concluded: "The possibility of prejudice at trial is not itself sufficient reason to wretch the Sixth Amendment from its proper context." Marion, 404 U.S. at 321-2.
Just one year later, in devising the four-pronged analysis in the Barker v. Wingo majority opinion, Justice Powell labeled the speedy trial right "so slippery", 407 U.S. at 522 and "generally different from any other the other rights enshrined in the Constitution . . ." 407 U.S. at 519. He referenced the courts' "large backlog in cases", 407 U.S. at 519, and the deplorable state of [penal] institutions." 407 U.S. at 520.
Much has changed since 1972. First, this Court has reduced its trial backlog tremendously. The delay has been cut by over 60%[9] Second, the Rhode Island Adult Correctional Institutions has achieved significant accreditations and improvements[10] while the treatment of prisoners throughout the country has improved.[11] Third, our legislatures have had three decades to establish public policy changes, as they see fit. This discourages the judiciary from entering a realm where the ills have now abated and the Constitutional rights remain secure.
Mr. Prudence fails to suffer from either a crowded trial calendar or a lengthy confinement — he was imprisoned for committing another felony for most of the delay, and did not know of the pending charges.
Even Justice Powell acknowledged, "the right of speedy trial is a more vague concept than other procedural rights . . . We cannot definitely say how long is too long . . . It is impossible to do more than generalize about when those rights exists. . . ."Barker at 112. Deep within the decision the Barker court warned of the undesired result
 The amorphous quality of the right leads to the unsatisfactorily severe dismissal of the indictment when the right has been deprived. This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried. Such a remedy is more serious than an exclusionary rule or a reversal for a new trial. . . . Barker at 533.
Such a harsh result encourages the courts to apply it cautiously.
Fourteen years later, Justice Powell heeded his own warning when readdressing the speedy trial right. He limited application of the right and in so doing, his words may prevent Mr. Prudence from relief under the clause.
 When defendants are not incarcerated or subjected to other substantial restriction on their liberty, a court should not weigh that time towards a claim under the Speedy Trial Clause. United States v. Loud Hawk, 474 U.S. 302, 312, 106 S.Ct. 648, 88 L.Ed. 640
(1986).
The high court's wary application of this right to prevent prosecutions was demonstrated again in the 1992 Doggett
decision. While upholding the dismissal on speedy trial grounds for an 8½ year delay, the Supreme Court held that delays should be treated differently, based on the different reasons for delay. A delay caused by the government's bad faith encourages dismissal. Mere negligence is weighed lighter than a deliberate intent to harm the defense. Negligence without any showing of prejudice must have lasted longer to justify speedy trial redress.[12] Doggett, pp. 657-8.
It is therefore appropriate to limit recovery under the speedy trial guarantee in cases where the defendant shows no actual prejudice, has not been unfairly incarcerated for an extended period and where neither he nor the public knows of the indictment.
B. The Motion for Speedy Trial.
By comparison, Mr. Prudence's Motion for a Speedy Trial, filed simultaneously with the Motion to Dismiss, is an easier call. The motion is not opposed and is granted.
III. Conclusion.
As Mr. Prudence demonstrated no actual prejudice, was not detained for an extended time as a result of the pending charges, and neither he nor the public knew of the indictment, dismissal of the charges pursuant to the Speedy Trial clause is unwarranted. Nevertheless, the State's delay in arraigning Mr. Prudence is disfavored and reprehensible.
Mr. Prudence's motion to dismiss is denied.
Mr. Prudence's motion for a speedy trial is granted.
[1] State v. Clifford Prudence, Providence County Superior Court case no. P2-03-3963.
[2] After hearing counsel on the motion to dismiss, the Court, sua sponte, scheduled a separate hearing encouraging the parties to present evidence on several issues including "why Mr. Prudence was not arraigned promptly." No evidence was introduced to indicate why the State delayed in notifying Mr. Prudence.
[3] Here, where Mr. Prudence neither knew of the indictment and it was a secret indictment, this time may not toll until he is held on the new charge. See United States v. Gomez,67 F.3d 1515, 1521 (C.A. 10, 1995) which finds that formal indictment or arrest and holding on a new charge triggers the speedy trial right, while arrest on a state charge is of no consequence for the speedy trial right on the federal charges.
[4] It should be noted that while the length of the delay justifies a further analysis of the Barker factors, the length should be viewed in context. Through September of 2006, Mr. Prudence was incarcerated on other charges. Until May 2006, neither Mr. Prudence nor the public knew of the secret indictment. The longer the delay, the greater the "presumptive prejudice" and courts will be less tolerable. State v.DeAngelis, 658 A.2d 7, 12 (R.I. 1995), quoting Doggett,505 U.S. at 657. Mr. DeAngelis was arraigned four and one-half years after his Criminal Information was filed and he had requested a speedy trial. By comparison, Mr. Prudence's delay, while presumptively prejudicial, was much shorter.
[5] Although the warrant for Mr. Doggett had been entered into a customs computer, the government delayed 8½ years until arresting him, even though he had traveled internationally in the interim. Doggett, 505 U.S. at 650-651. Compare Nebraska v.Simmons, 2003 Neb. App. Lexis 75 (2003) where defendant was incarcerated during most of the five years when his warrant was outstanding, but the motion to dismiss was denied as defendant failed to show any prejudice.
[6] One of the primary purposes of an arraignment is "to inform the defendant of the charges against him or her." 21 AM. JUR. 2DCriminal Law § 589 (2006). .
[7] Further, the likelihood that Mr. Prudence would have been sentenced to concurrent time has not necessarily changed. Sentencing would take effect by the sentencing judge, who would likely note that the offenses occurred at different times, in different instances. This is no change from the procedure employed in 2003. In drafting the Superior Court Sentencing Benchmarks, the Sentencing Study Committee stated that "where defendants are sentenced for multiple offenses at the same time, the decision about whether the sentences should be concurrent or consecutive should remain at the discretion of the sentencing judge." Paragraph 7 of "Using the Benchmarks".
[8] See discussion of United States v. Loud Hawk,474 U.S. 302, 312, 106 S.Ct. 648, 88 L.Ed. 640 (1986), page 11 herein.
[9] The median delay from indictment and information to disposition in Providence County was 277 days in 1976. Justice Delayed, Thomas Church, Jr. et al, National Center for State Court, 1978 as quoted in Reexamining the Pace of Litigation in 39 Urban Trial Courts, Goerdt, John, National Center for State Courts, 1991, p. 24. The average time to trial from date of arrest for 2005 was 16 weeks or about 112 days. Annual Statistical Report to the Presiding Justice, Rhode Island Superior Court, 2006.
[10] Rhode Island had the fourth lowest incarceration rate in the country in December 2003, and was one of 11 states to see its prison population decrease. Bureau of Justice Statistics Bulletin, October, 2005, U.S. Department of Justice, Office of Justice Programs.
[11] A recent law review article concluded:
 by almost any measure, it is clear that, over the past thirty years, litigation has had a tremendous impact on the nation's jails and prisons. New doctrine has become part of the established legal landscape . . . Sadistic treatment at the hands of inmate trustees is a thing of the past. . . . Inmates now expect to receive nourishing meals and adequate medical care. Nowadays, basic services and amenities are routinely made available to all prisoners . . . "The Prison Conditions Cases and the Bureaucraticization of American Corrections: Influences, Impacts and Implications", Pace Law Review, February 16, 2005, 12:20, Malcolm M. Feeley and Van Swearingen.
[12] Four members of the Doggett court dissented as the defendant had not presented any actual prejudice or harm.Doggett at 658 et. seq.