# STATE

v.

## Carl W. CROCKER.

### No. 98–334–C.A.

Supreme Court of Rhode Island.

March 15, 2001.

Jane M. McSoley, Aaron L. Weisman, Providence, for Plaintiff.

Janice M. Weisfeld, Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Present: WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

The use of the Yiddish word "chutzpah" in reported legal decisions is apparently on the rise.[1] If so, it may be because courts are increasingly called upon to answer legal questions like the one posed to us in this case. Here, following the 1981 arraignment of the defendant, Carl W. Crocker (Crocker), on criminal charges of sexually assaulting an eight-year-old child, the Superior Court released him from custody on his own personal recognizance. In doing so, the court relied upon Crocker's promises to remain in this state while the case was pending and to appear before the court, upon receiving notice to do so, for all later hearings and the trial itself. Nevertheless, after receiving advance notice, Crocker not only failed to show up in 1981 for his scheduled pretrial conference, but also, despite knowing of an outstanding warrant for his arrest, he deliberately stayed away from this jurisdiction for the next sixteen years. And yet, when he finally was arrested and forced to return to Rhode Island in 1997, he immediately asserted that all charges against him should be dismissed because the state had not provided him with a speedy trial because of its negligence in failing to arrest him sooner. After the trial justice denied this motion, a jury proceeded to convict Crocker of all charges against him.

On appeal Crocker still presses his speedy-trial theory. Given defendant's chutzpah in attempting to profit in this case by his own wrongdoing, we resist the temptation to let "speedy, schmeedy" serve as our sole response to this contention. Instead, we elaborate below upon why the trial justice did not err when he denied this motion.

### Facts and Travel

On February 23, 1981, the Newport County grand jury indicted Crocker, charging him with one count of first-degree sexual assault and one count of second-degree sexual assault on an eight-year-old child (victim). At that time, Crocker was serving in the United States Navy and stationed in Newport. The Superior Court arraigned Crocker on March 19, 1981. After accepting his plea of not

1. See, e.g., Alex Kozinski & Eugene Volokh, Lawsuit, Shmawsuit, 103 Yale L. J., 463, 463–64 (1993) (concluding that "Yiddish is quickly supplanting Latin as the spice in American legal argot," and documenting that "chutzpah" had appeared in more than 100 reported cases between 1980 and 1993, while "[d]uring the same period the word temerity (a woefully inadequate substitute) was used only about two hundred times, and 'unmitigated gall' a mere ten").

guilty, the court released him on $2,000 personal recognizance. In signing his personal recognizance form, Crocker listed the same Michigan address under his signature as the one that the grand jury had reported as his residence. But in signing that form he also agreed that (1) he would "appear before the Superior Court, as required for all scheduled hearings upon notice being sent to the defendant or to defendant's counsel by the Clerk of Court," and (2) he would "not leave the state while this matter is pending without permission of the Court." Nevertheless, Crocker no sooner had signed this form, then he left Rhode Island without permission of the court, returned to his Michigan residence, and remained absent without leave from this jurisdiction for more than sixteen years until he was captured in 1997 and returned to this state to stand trial.

In a 1997 letter to his daughter, Crocker admitted that while he was still in Michigan he had received notice from the court of his upcoming 1981 pretrial conference date. He said that he then called the court clerk's office in Newport and was told that he would be arrested if he failed to appear. When Crocker nevertheless failed to appear, the court issued a warrant for his arrest. Crocker's attorney then sent him a certified letter informing him of the outstanding arrest warrant. The state, however, took no further steps to apprehend Crocker. Apparently, for reasons that are still unknown, the case fell through the cracks and languished for more than sixteen years—until the victim's mother called the Attorney General's office in 1997. This inquiry prompted a search of the case file, which in turn led to the state's rediscovery of the arrest warrant, Crocker's eventual arrest in Michigan, and his extradition and forced return to Rhode Island on May 27, 1997. After Crocker moved to dismiss the charges based upon an alleged violation of his right to a speedy trial, the court denied the motion; the state then detained him pending the commencement of his trial, which began less than a month later, on June 23, 1997.

On June 30, 1997, a jury found him guilty on both counts of sexual assault against the victim. The trial justice then sentenced Crocker to fifty years (twenty years to serve and thirty years suspended, with probation), after which he filed a timely notice of appeal to this Court.

## Analysis

On appeal, Crocker again argues that the state violated his state and federal constitutional right to a speedy trial. He contends the trial justice erred by denying his motion to dismiss on this ground. According to Crocker, the state denied him a speedy trial by failing for more than sixteen years to follow through on an outstanding warrant for his arrest. Had it done so, he suggests, the authorities would have located him and then hauled him back into Rhode Island a lot sooner to face the sexual-assault charges that were still pending against him. Instead, he points out, more than sixteen years elapsed before the state finally woke up and caused him to be nabbed on the warrant.

■ To determine whether a defendant has been denied the right to a speedy trial, we apply, as the trial justice did in this case, the four-part test enunciated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972): namely, "(1) the length of the delay, (2) the reason for delay, (3) the defendant's assertion of his [or her] rights, and (4) the prejudice to the accused." *State v. Austin*, 731 A.2d 678, 683 (R.I.1999) (quoting *State v. Allan*, 433 A.2d 222, 224 (R.I. 1981)). "The determination of whether the right to a speedy trial has been violated requires the weighing of each factor, with no single one being wholly dispositive." *Id.* (quoting *State v. DeAngelis*, 658 A.2d 7, 11 (R.I.1995)). Below, we examine each *Barker* factor as applied to this situation.

### 1. Length of the Delay

■ The first factor (length of the delay) is a threshold consideration that trig-

gers review of the remaining factors only if the delay is long enough to be considered "presumptively prejudicial." *Austin,* 731 A.2d at 683. We have held that a delay of more than twelve months is "presumptively prejudicial." *DeAngelis,* 658 A.2d at 11; *State v. Tarvis,* 465 A.2d 164, 175 (R.I. 1983). The trial court found that the almost seventeen-year delay in this case between indictment and trial was "an extraordinarily long time," and that it was presumptively prejudicial. The state disputes the legal significance of this finding, arguing that the "speedy trial clock" should not have begun to run until June 20, 1997, when Crocker filed his first motion for a speedy trial, or, at the earliest, when Crocker was arrested and returned to Rhode Island on May 27, 1997 (a month or so before his trial and conviction). Therefore, according to the state, no prejudicial delay occurred in this case and no further *Barker* analysis should be required.

The state finds support for its position in our decision in *State v. Bleau,* 668 A.2d 642 (R.I.1995). There, as in this case, a defendant left the state after his arraignment and then failed to appear for a pretrial status conference. The trial court found that because the defendant's voluntary and unlawful absence from the state had caused the four-year delay between the defendant's arraignment and trial, the "speedy trial clock" did not begin to run until the defendant was arrested and returned to Rhode Island. *Id.* at 645. On appeal, we agreed with that conclusion. *Id.*

■ Although in this case, unlike *Bleau,* the state possessed an out-of-state address for the fugitive defendant—yet it still neglected to attempt any arrest at that address for more than sixteen years—we conclude that *Bleau's* holding is nonetheless applicable in this case. Here, too, Crocker's voluntary and unlawful absence from the state—in violation of his personal-recognizance agreement—was the primary cause of the delay in reaching this

case for trial. And even though the state was negligent in failing to follow through on the arrest warrant, Crocker's deliberate and knowing misconduct—not only in flouting the arrest warrant but also in violating his promises to remain within Rhode Island and attend further court hearings—overrides and outweighs the state's negligence. Thus, as in *Bleau, the speedy-trial clock did not begin to run until Crocker returned to this jurisdiction and was available to stand trial. But we also hold,* as we did in Bleau, *668 A.2d at 645, that "even if it were necessary to review the remaining* Barker *factors, we would nevertheless conclude that [Crocker's] right to a speedy trial had not been violated."*

## 2. Reason for the Delay

As previously indicated, the primary reason Crocker was not tried and convicted any sooner than sixteen years after his indictment is that he deliberately failed to appear for his pretrial conference date after receiving notice to do so. Thereafter, he remained outside this jurisdiction on the lam from an outstanding arrest warrant that he knew the court had issued after he failed to appear for his scheduled 1981 trial. The record indicates that Crocker had received notice of his 1981 court date, yet he still intentionally failed to appear. Thus, in a letter to his daughter, he told her that he had received notice of his 1981 court date and that he was informed by a court clerk that if he failed to appear he would be arrested and hauled back into court to stand trial. In addition, Crocker's attorney sent a certified letter to his Michigan address (where he eventually was apprehended) informing him that a warrant had been issued for his arrest.

Crocker apparently decided to call the court's bluff and thereby test whether the authorities actually would arrest him and bring him back to stand trial in Rhode Island. His strategy apparently worked because his case file and the outstanding warrant for his arrest somehow slipped

through bureaucratic cracks. As a result, the state failed to follow through on executing the warrant for more than sixteen years. After he violated the conditions of his release on personal recognizance and after he ignored both his initial court date and his subsequent arrest warrant, Crocker says he thought that the state's failure to arrest him meant that he was free and clear of all charges. Thus, he wrote to his daughter, "I waited 17 years for them to come and get me and they never did, so I guess they * * * dropped it or they held court without me and never told me the results."

According to Crocker, the blame for the delay in his trial rests solely with the state—unless the state can prove that it used due diligence to find him or unless it can prove that he affirmatively tried to avoid prosecution. Crocker relies upon *Doggett v. United States,* 505 U.S. 647, 657–58, 112 S.Ct. 2686, 2693–94, 120 L.Ed.2d 520, 531–32 (1992), to support his argument that, after he failed to appear for his first scheduled pretrial conference, it was primarily the state's negligent failure to arrest him that caused his trial to be delayed. In *Doggett,* the United States Supreme Court observed that:

> "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, * * * and its consequent threat to the fairness of the accused's trial." *Id.* at 657, 112 S.Ct. at 2693, 120 L.Ed.2d at 531–32.

Thus, according to Crocker, because the state's negligence in apprehending him was so "protracted," the state should bear the heaviest responsibility for the delay. *See id.* Yet, unlike the defendant in *Doggett,* who could not be blamed for the delay because he was unaware of his indictment or of the outstanding warrant for his arrest, Crocker knew of his indictment, his initial court date, and the warrant for his arrest—yet he still deliberately avoided returning to the jurisdiction. *Id.* at 653, 112 S.Ct. at 2691, 120 L.Ed.2d at 529. The Court in *Doggett* indicated that if the defendant in that case had known of his indictment during the period of delay between his indictment and eventual conviction, "*Barker's* third factor, concerning invocation of the right to a speedy trial, would [have] weighed heavily against him." *Id.* But here, however negligent the state was in failing to apprehend him sooner, Crocker's evasive misconduct was not merely negligent, but willful and deliberate. Thus, he is more culpable than the state for causing the delay in his trial.

Moreover, Crocker's reliance on cases from other jurisdictions is likewise undermined by the fact that he, unlike the defendants in those cases, knew of his indictment and pretrial conference date and "knew * * * or should have known" that, when he failed to show up, the court had issued a warrant for his arrest. In one such case, *Branscum v. State,* 750 S.W.2d 892, 895–96 (Tex.App.1988), the court dismissed a defendant's murder conviction after finding that the state had denied him a speedy trial by failing to pursue and prosecute him for over twenty years.[2] The Texas court held that "[t]he primary burden is on the prosecution and the courts to insure that defendants are speedily brought to trial" and thus "[n]egligence in bringing [a] case to trial, however innocent, must militate against the State." *Id.* at 895. Yet, unlike Crocker, the defendant

---

**2.** The state mistakenly believed that the defendant was in a vegetative state and unable to be tried.

in *Branscum* was not responsible for the trial delay because no one had scheduled a pretrial conference and the court eventually dismissed the case eight years after his indictment for lack of prosecution. *Id.* Nor is Crocker's reliance on *Chandler v. State*, 284 Ark. 560, 683 S.W.2d 928 (1985) justified. The defendant in that case was never even notified of her arraignment (notice was sent to the wrong address). Thus, unlike Crocker, she could not be faulted for the resulting trial delay.

■ Finally, Crocker argues that he should not be blamed for the trial delay because he took no "deliberate and evasive actions" (like changing his name or otherwise eluding law enforcement authorities) to avoid trial. However, by intentionally failing to return to Rhode Island for his scheduled pretrial conference and by then ignoring an outstanding warrant for his arrest (of which he had been given notice by a court clerk and by his attorney), Crocker *did* take "deliberate and evasive actions" to avoid his trial. The mere fact that the state negligently allowed Crocker to get away with his evasive conduct for so many years does not excuse him from intentionally refusing to appear for his pretrial conference in the first place and then, for the next sixteen plus years, failing to return to Rhode Island to face criminal charges that "he knew, * * * or should have known" were still pending against him. Therefore, although we agree that the state was negligent in failing to arrest Crocker sooner, we hold that, because of his deliberate and willful misconduct, it was Crocker himself who was primarily responsible for his delayed trial.

### 3. Defendant's Assertion of the Right to a Speedy Trial

■ Although a defendant who is ignorant of outstanding charges against him cannot be expected to assert his right to a speedy trial, a defendant like Crocker, who deliberately has refused to face known charges, will be held accountable for his failure to " 'bang[ ] on the courthouse doors.' " *Austin*, 731 A.2d at 684 (quoting *Tate v. Howard*, 110 R.I. 641, 656, 296 A.2d 19, 27 (1972)). "When assessing a defendant's assertion of his right to a speedy trial, this Court looks for actions sufficiently aggressive to constitute the equivalent of 'banging on the courthouse doors.' " *Id.* Here, Crocker's failure to assert his right to a speedy trial during the sixteen-year period between his 1981 indictment and his 1997 arrest led the trial justice to find that "[t]he aspect of the defendant knocking on the courthouse door is totally absent from this case." [3] Yet, the trial justice went on to conclude that because "a legally prudent person on warrant status would be ill-advised to * * * knock on the courthouse door asking for a speedy trial," Crocker's failure to do so would not be weighed against him.

■ We disagree with this conclusion, and hold that a legally prudent person who faces criminal charges and who has deliberately avoided a trial date and ignored an outstanding arrest warrant is well advised to assert his or her right to a speedy trial—if he or she wishes to preserve that right by—loudly knocking on the courthouse door and demanding a speedy trial. This is *especially* true if a defendant is on notice that a warrant for his or her arrest is outstanding. In determining whether the state has denied a defendant his or her right to a speedy trial, this Court has always emphasized the importance of the defendant's vigorous and timely assertion of that right. In *State v. Anthony*, 448 A.2d 744, 750 (R.I.1982), we held that the defendant's failure to assert his right to a speedy trial for two years following his indictment "hardly demonstrates an active pursuit of this right." Although "[s]uch [a] lack of aggressive action in demanding a speedy trial does not alone constitute a waiver, [it] nonetheless is an important

---

**3.** Crocker finally asserted his right to a speedy trial on June 20, 1997, after he was arrested and brought back to Rhode Island to face charges.

consideration, particularly [in light of the fact that] a portion of the delay is attributable to [the defendant]." *Id.* Likewise, in *State v. Hernandez,* 641 A.2d 62, 68 (R.I. 1994), we held that a defendant who moved for a speedy trial one month after a criminal information—but then not again until almost twenty-two months later—had tapped only lightly on the courthouse doors and "could have been more aggressive in asserting her right."

██ Our emphasis on Crocker's lack of assertiveness and timeliness in filing his speedy-trial motion also is consistent with *Doggett.* There, the United States Supreme Court held that if the defendant in that case had known of the charges pending against him during the period his trial was delayed, as Crocker did, his failure to assert his right for a speedy trial "would [have] weighed heavily against him." *Doggett,* 505 U.S. at 653, 112 S.Ct. at 2691, 120 L.Ed.2d at 529. Therefore, we hold that Crocker's sixteen-year failure to assert his right to a speedy trial weighs heavily against his belated assertion of a speedy-trial violation. In doing so, we reject Crocker's "no news is good news" stance, pursuant to which, he says, he just assumed after a while that the charges no longer were pending.

### 4. Prejudice to the Defendant

The final factor for us to weigh in determining whether the state violated Crocker's right to a speedy trial is whether the trial delay prejudiced him. Crocker argues that the delay put him at a disadvantage because various character witnesses, who would have testified on his behalf, no longer were available to testify.[4] Noting that Crocker had filed no notice of his intent to call witnesses and that "there [were] probably no fact witnesses that he could offer, even if he wanted to," the trial

justice was unconvinced that Crocker's case truly depended on the testimony of these so-called character witnesses.

We are equally unpersuaded that Crocker's alleged inability to locate character witnesses in 1997 prejudiced him because of the passage of time. Neither of the two key fact witnesses (the victim, who was the only eyewitness, and Crocker's son) experienced any material lapses of memory over the lengthy period between indictment and trial. In addition, Crocker never presented evidence that would lead us to believe that any of his proposed character witnesses—all of whom allegedly were unavailable or unable to testify at his 1997 trial because of the delay—were of critical importance to his case. In fact, Crocker never took advantage of the trial justice's offer to give him "a reasonable amount of time" to produce "either the original witnesses" or "more contemporary or perhaps more probative witnesses," thereby further indicating to the trial court and to us that, in all likelihood, no material character witnesses existed.

Finally, Crocker argues that even if he failed to show any specific harm, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Doggett,* 505 U.S. at 655, 112 S.Ct. at 2692, 120 L.Ed.2d at 530. Thus, he suggests, this Court should follow *Doggett* and recognize that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at 655, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. According to Crocker, we should find as the Court did in *Doggett:* because the delay was so protracted (over sixteen years in this case versus eight and one-half years in *Doggett* ), the passage of such a significant period alone should be sufficient to support

---

**4.** Allegedly, Crocker and/or his attorney had lined up a number of character witnesses, (mostly from the Newport Naval facility, where he then was stationed) at the time he was preparing to go to trial in 1981. Of course, this occurred before he skipped town and reneged on his agreement to return to court, upon receiving notice to do so, for his scheduled pretrial conference. His defense counsel represented that, as of 1997, it was unlikely she would be able to locate any of these witnesses.

a presumption of prejudice. *Id.* at 657–58, 112 S.Ct. at 2694, 120 L.Ed.2d at 531–32.

 Even were we to agree with Crocker that the over sixteen-year hiatus between his indictment and trial was presumptively prejudicial to his defense and that the importance of this prejudice increased as the length of the delay increased, we still would not conclude that, *ipso facto*, the state has denied him his right to a speedy trial because "such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Doggett,* 505 U.S. at 656, 112 S.Ct. at 2693, 120 L.Ed.2d at 531. Therefore, because Crocker, unlike the defendant in *Doggett,* intentionally avoided returning to this jurisdiction to face the charges that he knew or should have known were still pending against him—and thus was himself largely responsible for the delay in his eventual trial—we hold that any presumptive prejudice he may have suffered was insufficient by itself, and ultimately unavailing in light of the other *Barker* criteria, to support a finding that the state violated his right to a speedy trial. *Id.* at 653, 112 S.Ct. at 2691, 120 L.Ed.2d at 529.

## Conclusion

Therefore, for these reasons, we hold that the state did not deny Crocker his right to a speedy trial. Accordingly, we reject his appeal and affirm his conviction.

WILLIAMS, Chief Justice, did not participate. Justice BOURCIER, did not attend oral argument but participated on basis of briefs.