DECISION
Before this Court is defendant Jorge Brito's motion to dismiss, with prejudice, a three-count indictment from August 17, 2001, charging him with one count of First Degree Sexual Assault and two counts of First Degree Child Molestation Sexual Assault. In support of this motion, the defendant alleges that he has been denied the right to a speedy trial, guaranteed by Article 1, section 10 of the Rhode Island Constitution and the Sixth andFourteenth Amendments to the United States Constitution. Further, the defendant alleges that he has been denied a due process right to be free of prejudicial pretrial delay, guaranteed by Article1, sections 2 and 10 of the Rhode Island Constitution and theFifth and Fourteenth Amendments to the United States Constitution. The defendant alleges the delay of more than four years between his August 17, 2001 indictment and the December 2, 2005 hearing thereon constitutes the basis for said motion.
Also before this Court are a motion to dismiss, with prejudice, the two-count indictment from October 29, 2004, by which the State re-indicted the defendant on Counts One and Two of the August 17, 2001 indictment, and a motion to dismiss, with prejudice, the single-count indictment from July 8, 2005, by which the State again re-indicted the defendant on Count Two of the August 17, 2001 indictment. These two motions are nearly identical to the defendant's above noted motion to dismiss the original August 17, 2001 indictment. Indeed, all three motions are addressed in a single supporting memorandum. The State objects to these motions.
Also before this Court are a second motion to dismiss, with prejudice, the October 29, 2004 re-indictment and a second motion to dismiss, with prejudice, the July 8, 2005 re-indictment for misnomer of the defendant in the indictments. The State objects to these motions as well.
Finally, before this Court is the defendant's Rule 12(b) motion to dismiss, with prejudice, the October 29, 2004 re-indictment on the grounds that "trial and conviction on the two offenses charged in this indictment would violate [the defendant's] constitutional rights against double jeopardy guaranteed by the United States and Rhode Island Constitutions, and the common law doctrine of merge [sic]." (Def.'s Mot. to Dismiss Pursuant to Rule 12.) A memorandum in support of this motion was not provided by the defendant. The State objects to this motion.
 FACTS AND TRAVEL
On August 17, 2001, a Providence County Grand Jury returned an indictment against the defendant, identified as "GEORGE BRITO, alias John Doe," charging him with one count of First Degree Sexual Assault and two counts of First Degree Child Molestation Sexual Assault in violation of G.L. 1956 §§ 11-37-2 and11-37-8.1. Counts One and Two of the three-count indictment corresponded to incidents that were alleged, in that indictment, to have occurred "on a day and date between the 1st day of April, 1993 and the 30th day of September, 1993, the exact day and date unknown to the Grand Jurors." (Indictment P1-2001-2515A, Aug. 17, 2001.) Count Three of the indictment was alleged to have occurred "on a day and date between the 1st of January, 1991 and the 31st of December, 1996, the exact day and date unknown to the Grand Jurors." (Id.) The defendant was arraigned on these charges on October 26, 2001, at which time he entered a plea of not guilty. Bail was set at $75,000 with surety or 10% cash. The defendant posted bail that day.
On October 16, 2001, ten days before his arraignment, the defendant filed, inter alia, a motion for Rule 16 discovery, a motion for disclosure of Rule 404(b) evidence, and a motion for a bill of particulars, all of which were granted on October 30, 2001. On November 8, 2001, the State responded to the defendant's motions with a tangible evidence view, a partial response to the defendant's motion for a bill of particulars, and the State's own request for discovery and alibi.
On November 27, 2001, the defendant filed a motion to dismiss based on the misspelling of the defendant's first name, "Jorge," as "George," in the indictment. The defendant also filed a motion to assign his previously filed motion for a bill of particulars, as well as an extensive motion for exculpatory evidence. The matter was heard on December 12, 2001, when the defendant's motion to dismiss was denied. The State, however, was ordered to respond with particularity to items 1-5 and generally to items 6, 7, and 9 of the defendant's motion for a bill of particulars and to make such response on or before December 26, 2001, or as soon thereafter as possible. In addition, the State was ordered to comply with the defendant's motion for exculpatory evidence by January 4, 2002, and to provide affidavits from the mothers of the alleged minor victims, and documents identifying the names and addresses of the victims' treatment providers. Alternatively, the State could permit defense counsel to subpoena the mothers of the alleged minor victims to determine the identity of the treatment providers.
As a result of the State's failure to fully comply with the order by satisfying the defendant's discovery motions, a second order directing the State to fulfill these requests was entered on March 27, 2002, followed by another such order on March 5, 2003. As of July 17, 2003, the State still had not fully complied with the defendant's discovery requests, prompting the defendant to file another motion to dismiss, this time for failure to comply with discovery orders pursuant to Rule 16 of the Super R. Crim. P. and for lack of a speedy trial.[1]
On November 5, 2003, this Court denied defendant's motion to dismiss. Though this Court concluded that a sanction was warranted, it fashioned a less drastic sanction in observance of the Rhode Island Supreme Court's holding in State v. Musumeci,717 A.2d 56, 63 (R.I. 1998), disfavoring dismissal of criminal charges for the State's discovery violations except in the most extreme circumstances. State v. Brito, No. P1/01-2515, at 20, 22 (R.I.Super. Nov. 5, 2003).
This Court based its decision to sanction the State on a number of factual findings. Overall, the record clearly established that the State had failed to comply with all court orders compelling compliance with the defendant's discovery requests and that the State's explanations for failing to comply fully with the defendant's discovery motions, e.g., two changes of assigned prosecutors, the diversion of a prosecutor's attention to a lengthy trial, and the heavy volume of cases handled by the Department of Attorney General, did not excuse or justify the State's noncompliance over a twenty month period. Id. at 18, 21. This Court concluded that the violation was the result of "gross and inexcusable neglect on the part of the three prosecutors assigned to this case in failing to use due diligence in complying with the orders issued by the Court." Id. at 20. Further, this Court found that, but for a period between September and November of 2002, the defendant made repeated efforts to seek compliance with outstanding discovery orders and informed the State that the delay was hampering the defense's ability to prepare its case. Id. at 19. Finally, this Court found that the State's failure to comply with the discovery orders caused substantial prejudice to the defendant in the form of delay, preventing him from properly preparing for trial over a substantial period, necessitating "the expenditure of additional time and money," and subjecting the defendant to a longer period of "emotional upheaval and uncertainty." Id. at 19, 20. Accordingly, this Court imposed upon the Department of Attorney General a monetary sanction in the amount of $4950, payable to defense counsel as "reimbursement for the time and efforts spent by defense counsel enforcing orders requiring the State to comply with their [sic] discovery obligations." Id. at 23.
By the filing date of November 5, 2003, the State had fully complied with the discovery orders. While the decision was being prepared, the state had untimely proffered a response to the defendant's motion to disclose 404(b) evidence, originally due on January 4, 2002. Although the State's request for reciprocal discovery had not yet been completed and, indeed, would not be completed until June 1, 2004, the State claims that it was ready trial at this time. Trial was set for December 18, 2003. Prior to that date, the State completed its trial preparation meetings with the complaining victims.
On December 11, 2003, however, the defendant moved to continue the trial date, claiming that he would be unready for trial until March or April of 2004 "given the press of other cases and scheduled trial dates." (Def.'s Mot. to Continue Trial Date ¶ 5.) Other grounds for granting the continuance, the defendant explained, were that he had been granted permission to file additional subpoenas for additional medical records, which were returnable January 14, 2003, and defense counsel had been unable to answer discovery because the defendant resides in Virginia and works on merchant vessels, making him frequently unavailable. (Id. ¶ 2.) Further, the defendant had not worked on the case pending this Court's decision on the defendant's Motion to Dismiss, "given the possibility that the case might be dismissed." (Def.'s Mot. to Continue Trial Date, December 11, 2003 ¶ 2.) Consequently, the trial date was vacated, and a status conference was scheduled for January 26, 2004.
On January 20, 2004, further difficulties in obtaining subpoenaed medical records caused the defendant to file another motion to continue. The defendant stated that he would not be ready to try the case before May 3, 2004 on account of previously assigned trial dates, pending matters in federal court, and the defendant's pending investigation in preparation for answering discovery. (Def.'s Mot. to Continue, January 20, 2004.) On April 7, 2004, the defendant again requested that the trial be continued, this time until June 21, 2004, and the State agreed to the said request.
In early April 2004, the State advised the defendant that it had received information leading it to question whether Counts One and Two of the August 17, 2001 indictment reflected the correct time frame for the alleged offenses and that the matter was under investigation. At some point in April or May, the State learned that the dates, in fact, had been miscalculated by one year; two of the victims now claimed to have been assaulted in the summer of 1994 instead of the summer of 1993 as they had previously alleged. The State requested the defendant's permission to correct the indictment, but the defendant refused, necessitating that the State seek re-indictment on the two counts. As a result, the June 21, 2004 trial date was vacated, and, on October 29, 2004, the defendant, identified as "GEORGE BRITTO, alias John Doe," was re-indicted on Counts One and Two of the August 17, 2001 indictment. Counts One and Two of the August 17, 2001 indictment were subsequently dismissed.
Although the defendant was originally scheduled to be arraigned on November 17, 2004, the arraignment did not take place until December 8, 2004, due to conflicts in the defendant's schedule. At the arraignment, bail was set, continuing the same conditions. Because the assigned prosecutor was involved in another trial at the time, she was present for only part of the arraignment proceedings. Needing to return to her trial, she left the matter in the hands of another prosecutor. Subsequently, the defendant filed several motions, including a Rule 16 motion for discovery that, due to a "delivery omission" caused by the State, was never received by the assigned prosecutor. (State's Mem. Objecting to Def.'s Mot. to Dismiss for Alleged Lack of Speedy Trial 11.) The assigned prosecutor did not learn of the motion until February 3, 2005 when she received a motion to compel discovery slated to be heard the following week. The defendant refused the State's request that the hearing be continued, and, at the hearing, the State was ordered to comply with the discovery request within thirty days. On March 8, 2005, the State timely filed its response along with its own motion for reciprocal discovery. The defendant has not yet responded to the State's request.
In March, the prosecuting attorney went on maternity leave causing this case to be reassigned a third time by the Department of Attorney General to the first and current prosecutor. Thereafter, it was discovered that both counts of the October 29, 2004 indictment, charging the defendant with two counts of First Degree Child Molestation Sexual Assault on one complaining witness instead of two counts on two different complaining witnesses, were identical. Furthermore, on the face of the October 29, 2004 indictment, it appeared that the defendant had not been re-indicted as to Count Two of the August 17, 2001 indictment. Rather, he appeared to have been twice re-indicted as to Count One.
The State promptly informed the defendant of the error, explaining that the grand jury had been properly charged and that the error on the face of the indictment was "purely typographical." (State's Mem. Objecting to Def.'s Mot. to Dismiss for Alleged Lack of Speedy Trial 12.) The State then asked for the defendant's permission to correct the error, and the defendant refused. On July 8, 2005, the State re-indicted the defendant, identified as "GEORGE BRITTO, alias George Brito, alias Jorge Brito, alias John Doe," as to Count Two of the August 17, 2001 indictment, correcting the errors in both previous documents. The State, however, did not dismiss Count Two of the October 29, 2004 indictment until November 30, 2005.
The defendant's arraignment on the July 8, 2005 indictment was scheduled for July 27, 2005, but was later rescheduled to August 10, 2005, at the defendant's request, due to scheduling conflicts. At the arraignment, bail was continued from the previous indictments and the defendant filed a motion for enlargement of time to file motions and to file a response to the State's request for reciprocal discovery, which was granted over the State's objection. The defendant also filed a Rule 16 motion for discovery.
On September 2, 2005, the State timely filed its response to the defendant's Rule 16 motion for discovery and, at the same time, filed its own request for reciprocal discovery. The defendant has not yet responded to the State's request.
On September 30, 2005, the defendant filed the six motions now before this Court. The defendant requested that the motions be heard on October 31, 2005. However, the hearing date was continued to November 16, 2005 at the State's request due to family medical matters, pending court excusals for grand jury work, and vacation time. On November 10, 2005, the defendant filed memoranda in support of its motions, and the hearing date was continued to December 2, 2005.
 ANALYSIS
I. The Defendant's Motion To Dismiss Pursuant to Rule 12 (Double Jeopardy)
In his September 30, 2005 motion to dismiss the October 29, 2004 indictment pursuant to Rule 12, the defendant argued, simply, that "trial and conviction on the two offenses charged in [the] indictment would violate his constitutional rights against double jeopardy guaranteed by the United States and Rhode Island Constitutions, and the common law doctrine of merge [sic]." (Def.'s Mot. To Dismiss Pursuant to Rule 12.) The defendant did not submit a memorandum in support of his position.
On November 30, 2005, the State responded to the defendant's Motion to Dismiss Pursuant to Rule 12 by filing a Rule 48(a) motion to dismiss Count Two only of the October 29, 2004 indictment with its "Objection to Defendant's Motion to Dismiss Pursuant to Rule 12(b)."[2] The single argument put forth by the State in its objection is that the dismissal of Count Two of the October 29, 2004 indictment renders the defendant's double jeopardy argument moot. This Court agrees.
The prohibition against double jeopardy contained in theFifth Amendment to the United States Constitution is echoed in Article1, section 7 of the Rhode Island Constitution, which provides that "no person shall be subject for the same offense to be twice put in jeopardy."[3] The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal" or conviction. State v. Grayhurst, 852 A.2d 491, 501
(R.I. 2004) (quoting State v. Rodriguez, 822 A.2d 894, 905 n. 13 (R.I. 2003). It also protects against "multiple punishments for the same offense." Id. As it originally read, the October 29, 2004 indictment contained two identical counts, charging the defendant twice for a single event against a single victim, clearly in violation of the defendant's right against double jeopardy. The State's dismissal of Count Two of the indictment has eliminated the problem, however. Taking into account the August 17, 2001 and July 8, 2005 indictments, there are but three counts remaining against the defendant, charging him with three separate acts against three separate complaining witnesses. This Court can find no other possible violations of the defendant's right against double jeopardy. Therefore, the defendant's double jeopardy argument is moot, and the motion to dismiss pursuant to Rule 12 is denied.
II. The Defendant's Motions To Dismiss on Grounds of Misnomer
On September 30, 2005, the defendant filed a motion to dismiss the October 29, 2004 indictment and a motion to dismiss the July 7, 2005 indictment on the grounds of misnomer of the defendant because the indictments were returned against "George Britto, while his name is Jorge Brito." (Def.'s Mots. to Dismiss (misnomer).) To this Court's knowledge, the defendant did not then file and has not since filed a similar Motion to Dismiss the August 17, 2001 indictment. (See State's Mot. for Continuance and Objection to Def.'s Mem. in Supp. of Unfiled Mot. to Dismiss P1-2001-2515A for Misnomer.) On November 9, 2005, the defendant submitted memoranda in support of both motions. At that time, the defendant also submitted a third memorandum, identical to the other two, purportedly in support of a motion to dismiss the August 17, 2001 indictment.
On November 16, 2005, the State filed its "Objection to Defendant's Memorandum in Support of Unfiled Motion to Dismiss P1-2001-2515A for Misnomer," alleging that the defendant had only served the State with motions to dismiss the October 29, 2004 and July 8, 2005 indictments. (Id.) Notwithstanding this Objection, on November 30, 2005 the State filed an objection and supporting memorandum in response to each of the defendant's motions, including the missing motion to dismiss the August 17, 2001 indictment.
 A. The Defendant's Motion To Dismiss the August 17, 2001 Indictment
Presently, this Court has no proof of a pending motion to dismiss the August 17, 2001 indictment for misnomer of the defendant. Accordingly, this Court will disregard the defendant's memorandum in support of the missing motion to dismiss, there being no actual motion to consider. This Court notes, however, that were such motion before the Court, the law of the case doctrine would prevent this Court from addressing the merits of the motion.
On November 26, 2001, the defendant filed a motion to dismiss the August 17, 2001 indictment that was identical to the motions to dismiss the October 29, 2004 and July 8, 2005 indictments presently before this Court. That motion was heard on December 12, 2001, and denied by court order dated December 19, 2001.
In Cipolla v. R.I. Coll., Bd. of Governors for Higher Educ.,742 A.2d 277, 280 (R.I. 1999) (citing Comm. Union Ins. Co. v.Pelchat, 727 A.2d 676, 683 (R.I. 1999)), the Rhode Island Supreme Court observed: "The `law of the case doctrine' provides that after one judge has decided an interlocutory motion in a pending suit, a second judge should refrain from disturbing the first ruling when confronted with the same question at a later stage of the suit." Here, the defendant has put before this Court an interlocutory motion that has already been denied. SeeState v. Morejon, 675 A.2d 410, 412 (R.I. 1996) (citing Statev. Wiggs, 635 A.2d 272, 275 (R.I. 1993) ("The denial of a motion to dismiss a criminal action . . . is not a final judgment from which an appeal may be taken.")). By entertaining the defendant's instant motion, this Court would be revisiting its earlier decision. The sole purpose of the law of the case doctrine is to avoid such results. See Cipolla, 742 A.2d at 280 (holding that the purpose of the law of the case doctrine is to ensure the stability of decisions and avoid unseemly contests between judges that could result in a loss of public confidence in the judiciary). The defendant does not present the law of the case issue in his supporting memorandum and has not provided any reason for this Court to disturb its earlier decision. See,e.g., Kelley v. Cowesett Hills Assoc., 768 A.2d 425, 430
(R.I. 2001) (holding that law of the case principles will not bar reconsideration of a renewed motion when evidence has been introduced in the interim that significantly expands the record). This Court finds, therefore, that any attempt by the defendant to relitigate the issue of misnomer in the August 17, 2001 must be denied.
 B. The Defendant's Motions To Dismiss the October 29, 2004 and July 8, 2005 Indictments
In his supporting memorandum, the defendant poses the argument that the correct spelling of a defendant's name is a material element of an indictment and, therefore, that failure to include the correct spelling of a defendant's name in an indictment demands dismissal. (See Mem. Law in Supp. of Def.'s Mot. to Dismiss for Misnomer of Def.) This Court finds, however, that the defendant is procedurally barred from raising these arguments because he waived his misnomer objection by failing to raise the issue before entering a plea to the merits. In State v. Drury,13 R.I. 540 (1882), the Rhode Island Supreme Court held that a plea of not guilty waives any objection to the complaint on the grounds of misnomer. Id. ("The defendant was complained of under the name of John Doe, and being arraigned by that name, pleaded not guilty. He thereby waived the misnomer, and the Court of Common Pleas rightly refused to dismiss the complaint on account of it."); see also State v. John L. O'Brien,18 R.I. 105, 25 A. 910 (1892) (holding that the defendant had waived his objection to misnomer by entering a plea of nolocontendere, and that the defendant should have pleaded in abatement for a misnomer before pleading on the merits); Statev. James R. O'Brien, 412 A.2d 231, 236 (R.I. 1980) (same); Torcia, Wharton's Criminal Procedure §§ 322, 323 (13th ed. 1990) ("A plea in abatement should ordinarily be interposed before filing a plea in bar; otherwise, the objection will be deemed waived."). Here, there is no indication that the defendant claimed a misnomer objection at the December 8, 2004 arraignment. This Court finds, therefore, that the defendant thereby, waived any misnomer objection. Accordingly, this Court will not address the defendant's arguments on the merits. The defendant's motion to dismiss the October 29, 2004 indictment is hereby denied.
With respect to the July 8, 2005 indictment, the record reveals that the defendant entered a plea of not guilty at his arraignment on August 10, 2005. This Court finds, therefore, that the defendant waived his objection to the indictment on the grounds of misnomer by entering a plea to the merits. Accordingly, the defendant's motion to dismiss the July 8, 2005 indictment for misnomer is denied for the same reasons as the identical motion to dismiss the October 29, 2004 indictment. This Court will not address the defendant's arguments on the merits.
III. The Defendant's Motions To Dimiss for Lack of Speedy Trial Prejudicial Pre-Indictment Delay
To determine whether a defendant's right to a speedy trial has been violated, this Court considers the four factors set forth by the United States Supreme Court in Barker v. Wingo,407 U.S. 514, 530 (1972). State v. Perez, 882 A.2d 574, 591 (R.I. 2005). Those factors are (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay actually was prejudicial.Id. Each of these factors must be fully considered, and no one factor "is wholly dispositive of a speedy trial claim nor is the insufficiency of any one factor fatal to the claim." State v.Wheaton, 528 A.2d 1109, 1112 (R.I. 1987)
A. The Length of the Delay
The first Barker factor, the length of the delay, "is a threshold consideration that triggers review of the remaining factors — but only if the delay is long enough to be considered `presumptively prejudicial.'" Id. (quoting State v.Verrecchia 766 A.2d 377, 385 (R.I. 2001)). The Rhode Island Supreme Court has held that "a delay of more than twelve months is `presumptively prejudicial.'" Id. (quoting State v.Crocker, 767 A.2d 88, 92 (R.I. 2002)). In the present case, the State concedes that the delay of more than four years "from the initial indictment to the filing of this motion is sufficient to trigger the necessity of inquiring into the other three Barker
factors." (State's Mem. Objecting to Def.'s Mot. to Dismiss for Alleged Lack of Speedy Trial 16.) Accordingly, this Court will address the remaining three factors, seriatim.
 B. The Reason for the Delay
Consideration of the second Barker factor, the reason for the delay, is a two-step analysis. Once it is established that the delay is "presumptively prejudicial," the court must determine the cause or causes of the delay and then balance the culpability of the parties in causing the delay. State v. Powers,643 A.2d 827, 831 (R.I. 1994). To the extent that the delay was caused by the State, the court must assess whether the delay was justified, assigning different weights to different reasons. In Barker,
the United States Supreme Court explained:
 A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.
407 U.S. at 531; see also Powers, 643 A.2d at 831 (applyingBarker).
This Court, therefore, begins its consideration of the secondBarker factor by drawing a line at November 5, 2003. With respect to allegations of delay prior to that date, this Court adopts its findings from the November 5, 2003 decision in this case. This Court has already determined that, in the period preceding the November 5, 2003 decision, the State failed to comply with all court orders compelling compliance with the defendant's discovery requests. Such failure, caused by the State's "gross and inexcusable negligence," unjustifiably prejudiced the defendant in the form of delay, preventing him from properly preparing for trial over a substantial period, necessitating "the expenditure of additional time and money," and subjecting the defendant to a longer period of "emotional upheaval and uncertainty." Brito, No. P1/01-2515, at 19, 20. This delay, though unintentional, is nonetheless without justification and, therefore, must be weighed against the State.See Crocker, 767 A.2d at 93 (quoting Doggett v.United States, 505 U.S. 647, 657-58 (1992)).
The defendant alleges that, in the more than two year period since November 5, 2003, the State has caused additional delay in violation of his right to a speedy trial by delaying the trial for approximately seven months in order to re-indict him on two separate occasions and, again, by delaying the trial for another month by failing to comply with a discovery request. The State does not dispute that its decision to re-indict the defendant as to Counts One and Two of the August 17, 2001 indictment caused the trial to be delayed by approximately four months — from the June 21, 2004 trial date until the October 29, 2004 re-indictment. The State argues, however, that such delay should not be weighed against it because the complaining witnesses — not the State — were responsible for the error, and correction of the error was necessary for the case to proceed. The State argues, therefore, that its actions and, by extension, the delay resulting from those actions was justified.
This Court agrees that re-indictment was necessary and that some delay associated with re-indictment — ordinarily sixty days — is certainly justifiable. Here, however, more than four months elapsed between the vacated trial date and the defendant's re-indictment. Because the State drives the Grand Jury, the State bears the responsibility for unjustifiable delays such as these in the indictment process. See Wheaton, 528 A.2d at 1112
(holding that the State must bear the ultimate responsibility for delay caused by the court calendar system, like delay caused by court congestion, and other delay of that nature). Even though the defendant may have avoided much of the delay by permitting the State to amend the indictment, this Court will not punish the defendant for asserting his right to deny amendment to the indictment. Thus, this Court weighs the unjustifiable delay of approximately two months against the State.
Likewise, this Court weighs against the State the more than two month delay caused by the State's decision to re-indict the defendant a second time. Whereas the State cannot be held accountable for errors in the indictment caused by the complaining witnesses, the State must be held accountable for official negligence in the indictment process. See Crocker,767 A.2d at 93 (quoting Doggett, 505 U.S. at 657-58). Thus, even though the State was justified in seeking to re-indict the defendant to correct the typographical error in the October 29, 2004 re-indictment, the State is responsible for the delay.[4]
Finally, even though the prosecution's failure to comply with the defendant's Rule 16 motion for discovery from December 8, 2004 was due to the fact that a copy of the motion had not been delivered to the prosecutor, this Court weighs the resulting delay of one month against the State. The State admitted fault for the "delivery omission," and such official negligence is weighed against the state.
This Court concludes, therefore, that the State has negligently caused significant delay in this case. That is not to say, however, that the State is responsible for all the delay in this case. The State argues, and this Court agrees, that some of the delay is attributable to the defendant.
Prior to November 5, 2003, the defendant was responsible for two continuances for a total of fourteen and one half weeks. The larger of these two continuances — two and a half months — was necessitated by family health obligations and can hardly be weighed heavily against the defendant. These delays prior to November 5, 2003 cannot outweigh the State's corresponding delay of the trial.
Similarly, the defendant's delays after November 5, 2003 do not exceed those of the State during the same period. The defendant is responsible for delaying the trial from November of 2003 until mid June of the following year. The defendant is also responsible for a three week delay before his arraignment on the October 29, 2004 indictment and a two week delay before his arraignment on the July 8, 2005 indictment. In the aggregate, these delays do not exceed those attributed to the State since November 5, 2003.
Even though, as the State points out, the defendant did not satisfy the State's request for reciprocal discovery on the first indictment until June 1, 2004 and has not satisfied the State's requests for reciprocal discovery in the subsequent indictments, this Court does not attribute any delay to the defendant. InBarker, the United States Supreme Court held that "the more serious the deprivation [of the right to a speedy trial], the more likely a defendant is to complain." 407 U.S. at 531. By the same token, this Court finds that, had the State been ready to move forward with the case, it would have, at minimum, filed a motion to compel discovery. The State, however, did nothing. There is no evidence that the defendant's failure to satisfy the State's requests has, in fact, delayed the trial. On balance, therefore, the delay in this trial is weighed against the State.
C. The Defendant's Assertion of the Right to a Speedy Trial
This Court next considers the third Barker factor. The Rhode Island Supreme Court has held that "when assessing a defendant's assertion of his right to a speedy trial, this Court looks for actions sufficiently aggressive to constitute the equivalent of a `banging on the courthouse doors.'" Perez, 882 A.2d at 592
(citations omitted). In the present case, the defendant has twice moved to dismiss the charges against him for lack of speedy trial but has never requested a speedy trial. The defendant first moved to dismiss for lack of speedy trial on July 17, 2003, twenty-three months after the original August 17, 2001 indictment. The defendant then renewed his motion on September 30, 2005, following another gap of more than twenty months.
The State argues that the facts of this case are controlled by the Rhode Island Supreme Court's decision in State v. Austin,731 A.2d 678 (R.I. 1999). In that case, the defendant had never requested a speedy trial but had moved to dismiss the charges against him for want of a speedy trial twice over the course of fifteen months. Id. at 684. The court opined that "[r]ather than demanding entry into the courtroom, defendant sat on his rights then asserted them as a means to avoid a trial." Id. The court concluded, therefore, that the "defendant's efforts [fell] short of evidencing a real desire to invoke his constitutional rights and proceed to trial." Id. (citing State v. Macaskill,523 A.2d 883, 885 (R.I. 1987)).
The defendant argues that the facts in the instant case are distinguishable from those in Austin, however, because the two motions to dismiss in Austin were the only evidence before the court of the defendant's assertion of his right to a speedy trial. Here, the defendant posits that by filing numerous motions to compel discovery, he has "insisted on his right to a speedy trial both literally and functionally." (George Britto's Mem. in Supp. of his Mot. to Dismiss Indictment for Violation of his Right to a Speedy Trial and Right to Due Process of Law 7.) The defendant explains that he never moved for a speedy trial because "the state had not answered discovery which would have allowed the trial to proceed [and] [t]he gesture would have been hollow and tantamount to a fraud upon the Court." Considering, however, that motions for speedy trial are typically filed as a matter of course and that such a motion would almost certainly have guaranteed quicker compliance by the State with the defendant's discovery requests, this Court finds the defendant's argument unavailing. There are, as the State points out in its objection, many tactical reasons for filing motions for and obtaining extensive discovery.
On balance, therefore, this Court finds that although the defendant made more than a minimal effort to put his case in trial posture, those efforts do not rise to the level of figuratively "banging on the courthouse doors." See Austin,731 A.2d at 684; State v. Corbin, 805 A.2d 702, 703 (R.I. 2001) (holding that the defendant had failed to assert his right to a speedy trial "promptly and consistently" when he waited until ten months after the charges were brought to assert the right and then raised the issue on only two more occasions); Crocker,767 A.2d at 94 (holding that a two-year delay in asserting one's right to a speedy trial "hardly demonstrates an active pursuit of this right").
The Rhode Island Supreme Court has held that failure to "bang at the courthouse door weighs heavily against [a defendant's] claim that his right to a speedy trial has been violated." Statev. Zmayefski, 836 A.2d 191, 194 (R.I. 2003). Here, however, even though the defendant failed to meet the necessary threshold, he made consistent efforts to move the case forward. See State v.Hernandez, 641 A.2d 62, 68 (R.I. 1994) (holding that a defendant who moved for a speedy trial one month after a criminal information — but then not again until almost twenty-two months later — had tapped only lightly on the courthouse doors and could have been more aggressive in asserting her right). This Court, therefore, weighs the defendant's failure to "bang at the courthouse doors" against the defendant.
D. The Prejudice to the Defendant
The final inquiry — whether the defendant actually was prejudiced by the delay — is assessed in light of the interests that the speedy trial right was designed to protect. Zmayefski,836 A.2d at 195; Barker, 407 U.S. at 532. The United States Supreme Court has identified three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. InWheaton, 528 A.2d at 1112 (quoting U.S. v. Marion,404 U.S. 307, 320 (1971)), the Rhode Island Supreme Court recognized, further, that whether or not the defendant is free on bail, pretrial delay may seriously interfere with his liberty and "may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends."
Here, the defendant primarily argues that the pretrial delay impaired the preparation of a defense. In support of his position, the defendant quotes two passages from this Court's November 5, 2003 decision in this case: "The State's failures in complying with discovery orders in the present case substantially prejudiced the Defendant since these charges relate to incidents that allegedly occurred between 1991 and 1996, thus making investigation a priority," and "[t]he late disclosures have caused substantial prejudice in the form of unjustifiable delay, expense, additional investigation, emotional distress, and an inability to formulate the defense in this matter." (George Britto's Mem. in Support of His Mot. to Dismiss Indictment for Violation of Right to a Speedy Trial and Right to Due Process of Law 8 (quoting Brito, No. P1/01-2515, at 20).)
The State argues that the defendant cannot rely on this Court's findings from the November 5, 2003 decision in this case because those findings pertain to "an entirely different matter." (State's Mem. Objecting to Def.'s Mot. to Dismiss for Alleged Lack of Speedy Trial 6 n. 4.) Even though this Court, as the State points out, may not have expressly cited the four-prongBarker test in denying the defendant's motion to dismiss in the November 5, 2003 decsion, this Court nevertheless performed a substantially similar analysis. This Court determined that the State had caused prejudicial delay of the trial by failing to comply with the defendant's discovery requests. Thereby, this Court performed the third and fourth prongs of the Barker test. This Court has since established that the length of the delay leading up to the November 5, 2003 decision was "presumptively prejudicial" and was primarily caused by the State. Therefore, this Court adopts its finding of prejudice from the November 5, 2003 decision.
In Barker, the United States Supreme Court held that delay that impairs the preparation of a defense causes the most serious form of prejudice "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." 407 U.S. at 532. However, the prejudice sustained prior to November 5, 2003 was insufficient to warrant dismissal at the time. Although the prior decision not to dismiss the indictment does not bind this Court to the same result now, this Court is aware of no reason to disturb its prior decision and is reluctant to do so. Even though the weight assigned to official negligence compounds over time, the passage of time since November 5, 2003 has not so increased the presumption of prejudice to the defendant such that dismissal would now be warranted. SeeDoggett, 505 U.S. at 655.
The defendant argues, further, that the delay in this case works "uniquely in the state's favor and against the defendant," alleging that the "jury will excuse the complaining witness for not remembering details of a time long past, and even for being contradictory," while "the defense will be unable to come up with rebuttal evidence as witnesses' memories will have understandably faded." (George Britto's Mem. in Supp. of his Mot. to Dismiss Indictment for Violation of his Right to a Speedy Trial and Right to Due Process of Law 9.) This Court finds the defendant's argument unpersuasive.
In the November 5, 2003 decision in this case, this Court observed that "[t]he passage of time has only detrimental effects on a defendant and the criminal justice system's search for truth in that recollections fade and information becomes less accessible or unavailable." (Def.'s Rebuttal Mem. in Supp. of His Mot. to Dismiss 3 (quoting Brito, No. P1/01-2515, at 20).) This Court has recognized that delay negatively impacts the defendantand the state. The defendant has offered no evidence to support his assertion that the deleterious effects caused by delay more deeply affect the defendant. Most persuasively, in State v.Vanasse, 593 A.2d 58, 64 (R.I. 1991) (quoting Marion,404 U.S. at 326), the Rhode Island Supreme Court held that such bare assertion of prejudice due to faded memory is wholly speculative and, therefore, is insufficient grounds for dismissal.[5]
In the same vein, the defendant claims that because of the delay in this case, he is now missing two potential witnesses — his father, who has died, and his nephew, who has been deported. The defendant, however, never listed his father or nephew as potential witnesses and their potential testimony is of questionable importance, which minimizes the prejudicial impact of their unavailability. See generally Verrecchia,766 A.2d at 385 (holding that previously unnamed alibi witnesses were of questionable importance to the defendant's case, finding, therefore, that the defendant was not prejudiced by their unavailability).
With the exception of travel expenses, the defendant has made no specific showing of any other demonstrable specific prejudice. The defendant argues that he and his family have suffered emotional trauma, but the mere allegation of such prejudicial effects does not indicate that the right to a speedy trial has been denied. See State v. Hernandez, 641 A.2d 62, 68 (R.I. 1994); see also State v. Macaskill, 523 A.2d 883 (R.I. 1987) (holding that the mere assertion that a defendant has suffered "emotional trauma" from awaiting trial is an insufficient basis for a speedy trial violation claim). The defendant has provided no proof of his claimed health problems — anxiety, depression, and diabetes — nor has he shown that these conditions or their relative severity is at all related to the delay in this case.
Furthermore, the fact that the defendant has never been incarcerated weighs heavily against a finding that the defendant has been prejudiced by the delay. See State v. Austin,742 A.2d 1187, 1194 (R.I. 1999). The State has allowed the defendant to live and work outside the jurisdiction while on bail. That the defendant has on a few occasions been required to return to Rhode Island can hardly be considered a prejudicial disruption.
Thus, this Court finds that the State's delay of the trial since November 5, 2003 has caused, at most, minimal prejudice. Compounded with the prejudice suffered prior to that date, this Court finds that the aggregate prejudice to the defendant, balanced against the other three Barker factors, does not warrant dismissal. In spite of the more than four years it has taken to get this case to trial, the defendant has failed to meet his burden in showing a constitutional infraction. See Perez,882 A.2d at 591. That is not to say, however, that this Court looks favorably on the travel of this case. The present case has dragged on for more than four years without reaching trial, and there comes a point when the State's needless delay of a trial warrants dismissal. Here, the State is perilously close to crossing that line. This Court reserves to the trial justice the opportunity to revisit this issue if, at trial, the evidence demonstrates actual prejudice to the defendant resulting from the delays since November 5, 2003. Having carefully weighed each of the Barker factors at this juncture, however, this Court finds that the defendant was not denied his right to a speedy trial.
 CONCLUSION
For the above reasons, this Court denies each of the defendant's Motions to Dismiss. This matter shall be assigned to the trial calendar forthwith.
[1] Rule 16(i) of the Rhode Island Superior Court Rules of Criminal Procedure provides:
 If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may order such party to provide the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material which or testimony of a witness whose identity or statement were not disclosed, or it may enter such other order as it deems appropriate.
[2] Rule 48(a) of the Rhode Island Superior Court Rules of Criminal Procedure provides, in relevant part: "The attorney for the State may file a dismissal of an indictment, information, or complaint and the prosecution shall thereupon terminate."
[3] In his Motion to Dismiss Pursuant to Rule 12, the defendant includes "the common law doctrine of merge [sic]" as a guarantor of his constitutional rights against double jeopardy. Because the defendant did not provide a supporting memorandum explaining his position, this Court can only assume that by "the common law doctrine of merge" the defendant meant the common law doctrine of merger.
In State v. Boudreau, 113 R.I. 497, 502, 322 A.2d 626, 629
(1974), the Rhode Island Supreme Court explained that "[a] merger, at common law, involved an act the commission of which constituted both a felony and a misdemeanor. In such instances, it was said that the misdemeanor was merged into the felony and the defendant could be punished only for the felony." InBoudreau, preferring to "tell it as it is," the court equated the doctrine of merger to the right against double jeopardy.Id. According to Boudreau, therefore, all issues of merger may properly be considered issues of double jeopardy. The reverse, however, is not true. Not all issues of double jeopardy involve issues of merger. Here, the defendant has not been charged with "an act the commission of which is both a felony and a misdemeanor." As a result, the common law doctrine of merger is not implicated.
[4] The failure of the State to indicate any special difficulty incurred in seeking re-indictment leads this Court to infer that only sixty days were needed to secure the re-indictment.
[5] In Vanasse, the issue before the court was whether the defendants suffered prejudicial pre-indictment delay.593 A.2d at 63. In his motion and supporting memorandum the defendant at bar included as grounds for dismissal the allegation that he has been denied a due process right "to be free of prejudicial pre-trial delay, guaranteed by R.I. Const. art. 1, §§ 2, 10 and U.S. Const. Amends. V, XIV." (Def.'s Mot. to Dismiss for Lack of Speedy Trial Prejudicial Pre-Indictment Delay.) The defendant, however, provides no support for this argument in either the motion or supporting memorandum. This Court, therefore, declines to address the allegation. In Vanasse, 593 A.2d at 64 (quoting U.S. v.Lovasco, 431 U.S. 783, 790 (1977)), the court held that the mere passage of time, without more, is not evidence of actual prejudice and proof of prejudice is generally a necessary but not sufficient element of a due process claim. Therefore, even though seven years elapsed in this case between the date of the last alleged assault and the defendant's indictment, this Court finds that, absent proof of prejudice, the defendant's motion to dismiss due to prejudicial pre-indictment delay must be denied.